2017 WY 94

In the Matter of The Worker's Compensation Claim of: William KEBSCHULL, Appellant (Petitioner),

v.

STATE of Wyoming EX REL. DEPARTMENT OF WORKFORCE SERVICES, WORKERS' COMPENSATION DIVISION, Appellee (Respondent).

S-17-0001

Supreme Court of Wyoming.

August 15, 2017

1250

Representing Appellant: James R. Salisbury, The Salisbury Firm, P.C., Cheyenne, Wyoming

Representing Appellee: Peter K. Michael, Wyoming Attorney General; Daniel E. White, Deputy Attorney General, Michael J. Finn, Senior Assistant Attorney General; Benjamin Eliazar Fischer, Assistant Attorney General.

Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.

DAVIS, Justice.

[¶1] Appellant William Kebschull challenges the Medical Commission's denial of additional temporary total disability benefits. He claims that he should receive such benefits pursuant to Wyo. Stat. Ann. § 27-14-605(a) (LexisNexis 2017) and the second compensable injury rule. We affirm.

## ISSUES

[¶2] Appellant presents several issues that interweave legal and factual theories. We have reorganized and refined them to better capture the core of the arguments under the applicable standards of review:

1. Was there substantial evidence to support the Medical Commission's conclusion that Appellant was not entitled to benefits under Wyo. Stat. Ann. § 27-14-605?

2. Is Wyo. Stat. Ann. § 27-14-605 impermissibly vague and ambiguous?

3. Did the Medical Commission misapply the second compensable injury rule?

4. Was there substantial evidence to support the Medical Commission's conclu-

sion that Appellant did not suffer a second compensable injury?

5. Did a mistake occur in the determination and award of permanent partial impairment benefits?

## FACTS

[¶3] This case concerns Appellant's persistent back problems and whether they were caused by a work-related injury. His history of back pain began before a reported workplace injury in 2008. Appellant was examined by a doctor in 1999 and complained "of rather severe back pain for the past year." Although the doctor set up physical therapy to treat the back pain, Appellant did not go.

[¶4] A few years later, in 2002, Appellant again complained of "chronic low back pain" to his long-term physician, Dr. Bennie Rosetto, who is board certified in internal medicine. Dr. Rosetto practices at the Veterans Administration out-patient clinic in Kalispell, Montana. He treated Appellant over many years for a number of complaints, and he prescribed ibuprofin for chronic back pain in April 2003. Medical records from 2006 also state that Appellant suffered from "chronic low back pain" and "degenerative changes in the spine."

[¶5] In early March of 2008, Appellant reported a work-related injury to his lower back. He was an assistant operator for an energy company in Pinedale at the time, and he hurt himself lifting a large valve. He also claimed to have slipped and fallen on the job a few days before that. Appellant was 62 years old at the time.

[¶6] The Pinedale medical clinic that Appellant went to on the day of the lifting incident diagnosed him with a lumbar contusion and strain. The treating physician devised a plan to have Appellant "start on some pain medication, be off work for a couple of days and rest the area as much as possible."

[¶7] An MRI taken later in March did not show any acute changes from the fall, but it did show preexisting degenerative changes. The detailed findings and impressions from that MRI provide in part as follows: [1]

FINDINGS:

\* \* \*

L4-5: There is very severe facet degenerative change and hypertrophy. There is a grade 1 degenerative spondylolisthesis. This finding, combined with congenitally short pedicles and ligamentum flavum hypertrophy, results in central stenosis. There is moderate left-sided and mild right-sided neural foraminal narrowing.

\* \* \*

IMPRESSION:

1. Degenerative change throughout with multifocal abnormalities. The most significant focal pathology relates to central spine canal stenosis at L4-5 which is both acquired and congenital in nature.

[¶8] Another MRI was performed in June of 2008, and it likewise showed no acute changes due to the work injury. Instead, it demonstrated degenerative changes with "minor canal stenosis" and moderate change in the spine due to anterolisthesis. The doctor reviewing that MRI determined in part:

FINDINGS:

MRI of the lumbar spine is performed unenhanced. The lumbar vertebral body heights are maintained. There is diffuse disc desiccation present which partially spares L5-S1. The conus demonstrates normal signal and morphology. There are no paraspinous abnormalities detected.

\* \* \*

L4-5: Mild Grade 1 degenerative anterolisthesis L4 on L5 present with moderately severe facet, and mild vertebral spondylosis. There is a small posterior central disc

---

1. Many medical terms are used in the record in this case, and some of them ought to be defined at this point for ease of reference. Spondylosis refers to "any lesion of the spine of a degenerative nature." *Stedman's Medical Dictionary* 1678 (27th ed. 2000). Spondylolisthesis is a "[f]orward movement of the body of one of the lower lumbar vertebrae on the vertebra below it or upon the sacrum." *Id.* Anterolisthesis is another name for spondylolisthesis. *See* https://www.spine-health.com/glossary/anterolisthesis. Spinal stenosis is a narrowing of the passages in the spinal column through which the spinal cord or spinal nerves pass. *See* https://www.spine-health.com/conditions/spinal-stenosis. The bottom line, as discussed below, is that these conditions may have caused pain by impinging upon the spinal cord or spinal nerves.

protrusion present accentuated by prominence of posterior longitudinal ligament. There is flavum hypertrophy and there is an element of congenital foreshortened pedicles. These factors contribute to moderate canal stenosis. There is also mild to moderate left ·and borderline ·biforaminal encroachment.

\* \* \*

'CONCLUSION:

Mild canal stenosis is present at L2-3 and L3-4 with moderate change at L4-5· as detailed above. Findings are due to a combination of congenitally foreshortened pedicles, spondylosis and disc protrusions, as detailed. There is also contribution by flavum hypertrophy at L4-5.

There is mild left foraminal encroachment at L4-5 and L5-S1 with borderline foraminal narrowing on the right side at each level due primarily to spondylosis.

[¶9] Appellant then saw Dr. Jacob Mathis for a neurosurgical consultation in April of 2008. Appellant explained how he was hurt on the job, but denied "any low back or spinal complaints prior to a slip-n-fall injury ... on March 11, 2008." An examination of Appellant's low back led Dr. Mathis to the conclusion that Appellant was temporarily totally disabled at the time.

[¶10] In June of 2008, Appellant saw another neurosurgeon, Dr. Robert Hollis. He told Dr. Hollis that he had "never had spinal difficulties until March 6, 2008."[2] Dr. Hollis diagnosed Appellant with modest to moderate lateral stenosis on L4-L5, but he did not feel surgery was appropriate. Ultimately, he thought that Appellant would not be able to perform anything "other than sedentary workstyle in the remainder of his career life given his pain syndrome and his multilevel degenerative disc disease." Appellant decided to try physical therapy in May of 2008, but he quickly stopped at the end of that month because, according to him, the therapy only increased his back pain.

[¶11] Dr. Rossetto at the VA clinic found Appellant unfit to return to work in 2008 and 2009. He then determined that Appellant was at maximum medical improvement on March 20, 2009. In the same month, Appellant went to Dr. Rossetto for certification of continued temporary total disability after he was released from care by Dr. Hollis. Another MRI was conducted, and Dr. Rossetto's review of it revealed "a lot of degenerative changes and nothing specifically surgical." Dr. Rossetto referred Appellant to Dr. Camden Kneeland.

[¶12] In July of 2009, Appellant reported low back pain to Dr. Kneeland, whose clinic specialized in treatment of spinal disorders. Dr. Kneeland noted a history of low back pain since the workplace incident, but his notes do not mention Appellant's history of back pain before then. Appellant was again diagnosed with the same long-term degenerative conditions, including lumbar spondylosis.

[¶13] Over a year later, Appellant saw Dr. Paul Ruttle, an orthopedist, in December of 2010 for an independent evaluation of his condition at the·Division's request. Dr. Ruttle diagnosed a "[m]usculoligamentous strain ... imposed on preexisting degenerative disc and facet arthrosis." He concluded that Appellant did "not represent a surgical candidate."

[¶14] A second independent examination at the behest of the Division was conducted by Dr. Bruce Belleville on April 11, 2011. Dr. Belleville is board-certified, among other things, in occupational and pain medicine. He too diagnosed Appellant with a degenerative condition—"[s]ymptomatic degenerative disk disease of the lumbar spine." He concluded this condition caused Appellant's back pain. He also noted that Appellant was neither· "permanently nor totally disabled" from working, but any work he performed needed to be "sedentary and light."

[¶15] Appellant received temporary total disability benefits from the time of his March 2008 injury. In May of 2011, the Division determined that he had reached an ascertainable loss (meaning that he had improved as

2. There is a discrepancy between the records of Dr. Mathis and Dr. Hollis regarding the date of injury. It appears the slip and fall occurred on March 6, 2008 and the incident involving the valve happened on March 11, 2008.

much as it was thought he would), and he was given a 3% impairment rating, which entitled him to permanent partial impairment benefits pursuant to Wyo. Stat. Ann. § 27-14-405. His temporary total disability benefits ended at this point.

[¶16] Even after accepting his rating and receiving permanent partial disability benefits, Appellant saw another doctor at the Veterans Administration. He wanted an opinion as to whether his spondylolisthesis was due to his work injury. Consistent with the previous doctors' findings, orthopedic surgeon Dr. Robert Seim concluded that any changes in Appellant's back condition as result from the work injury were "secondary to degenerative arthritis and most likely no more involved in his injury than all the other changes."

[¶17] Two months later, in July of 2012, Appellant consulted with Dr. Steven Rizzolo, an orthopedic surgeon. Once again, he wanted to know if his back problems were related to the work injury. During this visit, Dr. Rizzolo noted that the only medical records he had at the time were Dr. Rossetto's from the Veterans Administration. The doctor's notes reflect that Appellant was experiencing "chronic low back pain" without any indication that there were any new symptoms or changes from the past several years.

[¶18] In late August of 2012, Dr. Rizzolo received and reviewed more medical records, including those from Dr. Hollis and Dr. Kneeland. In November of 2012, Dr. Rizzolo provided an updated assessment, which explained in part that "[t]he patient's medical records indicate a history of spondylolisthe[sis] ..." and a "[h]istory of significant stenosis." The symptoms that Appellant described were the same as those that Dr. Ruttle noted in 2010. Indeed, Dr. Rizzolo thought Appellant's "symptoms now are very similar that he has had all along." The doctor recommended that additional x-rays be taken.

[¶19] In late January of 2013, Dr. Rizzolo noted that the new x-rays and an MRI reflected multilevel degenerative changes with grade one spondylolisthesis at the fourth and fifth levels of the lumbar spine (L4-5). The doctor surmised that much of Appellant's back pain was the result of spinal stenosis, or the encroachment on bone channels occupied by spinal nerves or the spinal cord. In February, Dr. Rizzolo gave Appellant an epidural steroid injection, and based on the results, the doctor recommended decompression and fusion surgery. The decompression was to treat stenosis at L3-4 and L4-5, and the fusion was to treat an extruded disk at L4-5.

[¶20] Dr. Rizzolo operated on Appellant in April of 2013 to remedy the aforementioned problems. He performed a posterior spinal fusion, which meant, according to his deposition testimony, putting "the bone graft on the sides of the spine as opposed to in between the vertebral bodies."[3] While it was hoped that Appellant's back problems would be cured, he testified that his back pain came back a year after the surgery.

[¶21] In late summer of 2014, Appellant applied for additional temporary total disability benefits. Dr. Rossetto certified Appellant as temporarily totally disabled from February 1, 2013 to February 1, 2014. Dr. Rizzolo did the same, but from February 13, 2013 for an "indefinite" time. The Workers' Compensation Division denied Appellant's application for the additional benefits. Appellant objected, and the matter was referred to the Medical Commission for a contested case hearing.

[¶22] At the hearing, a fair amount of evidence indicated that Appellant's back problems are due to degenerative changes. Dr. Rizzolo's deposition testimony, for instance, states that Appellant's spondylolisthesis is due to a "degenerative process," not a traumatic event. As to the stenosis, he concluded that there "was a significant component" that was degenerative. In addition, he admitted that at the time of the first evaluation, he had "little to no records" on Appellant's past medical condition to review.

[¶23] Other evidence presented came from the deposition testimony of Dr. Belleville. He explained that Appellant's lumbar spine condition predated his workplace injury in 2008, and that it was degenerative in nature and

---

**3.** Dr. Rizzolo did not perform interbody fusion as planned after concluding during the operation that the procedure was not worth the risk given Appellant's size and other factors.

not from a traumatic event. He opined that, at best, Appellant may have had "an exacerbation of symptoms [from the workplace injury], but no permanent aggravation of condition."

[¶24] In a detailed 30-page *Findings of Fact, Conclusions of Law, and Order of Medical Commission Hearing Panel,* the Medical Commission upheld the Division's decision not to award Appellant additional temporary total disability for the period between February 2013 to February 2014. It concluded that Appellant's symptoms were the result of a preexisting degenerative condition. Accordingly, the Commission concluded that Appellant failed to establish an increase in incapacity to a reasonable degree of medical certainty due solely to the work injury. It also rejected his theory that such benefits were warranted under the second compensable injury rule, finding no showing of an "appreciable difference in the condition of his lumbar spine" over time.

[¶25] Appellant petitioned the district court for review of the agency action pursuant to W.R.A.P 12, and that court upheld the Medical Commission's decision. Appellant then timely perfected this appeal.

## DISCUSSION

**Was there substantial evidence to support the Medical Commission's conclusion that Appellant was not entitled to benefits under Wyo. Stat. Ann. § 27-14-605?**

[¶26] Appellant contends the Medical Commission wrongly concluded that he failed to establish that there was an increase of incapacity due solely to the injury.[4] Before addressing the substance of Appellant's issue, we must first set forth the controlling standard of review. An appeal from a district court's review of an administrative agency's decision is treated as if it had come directly from the administrative agency. *Price v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.,* 2017 WY 16, ¶ 7, 388 P.3d 786, 789 (Wyo. 2017). Consequently, we give

no deference to the district court's decision. *Id.*; *Dale v. S & S Builders, LLC,* 2008 WY 84, ¶ 8, 188 P.3d 554, 557 (Wyo. 2008). Our review is governed by Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2017):

(c) . . . the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

\* \* \*

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

\* \* \*

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right; [or]

\* \* \*

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

[¶27] Hence, we apply a substantial evidence standard to review the agency's findings of fact. *Price,* ¶ 7, 388 P.3d at 789-90. Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* "Findings of fact are supported by substantial evidence if, from the evidence preserved in the record, we can discern a rational premise for those findings." *Bush v. State ex rel. Workers' Comp. Div.,* 2005 WY 120, ¶ 5, 120 P.3d 176, 179 (Wyo. 2005).

[¶28] If the agency determines that the burdened party failed to meet the requisite burden of proof, it is our job to decide "whether there is substantial evidence to support the agency's decision to reject the

---

4. Appellant breaks down his first issue into several subparts, including that the Medical Commission erred as a matter of law in denying temporary total disability benefits. We believe all of the subparts merge into the dispositive question of whether there was substantial evidence to support the Medical Commission's denial.

evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole." *Price*, ¶ 7, 388 P.3d at 790 (citation omitted). An agency's decision which disregards certain evidence and explains its reasons for doing so based upon determinations of credibility or other factors contained in the record will be sustainable under the substantial evidence test. *Id.* "Importantly, our review of any particular decision turns not on whether we agree with the outcome, but on whether the agency could reasonably conclude as it did, based on all the evidence before it." *Id.* Lastly, an agency's conclusions of law are reviewed *de novo*, and we will affirm only if such conclusions are in accordance with the law. *Id.*

[¶29] Guided by the above, we turn to the merits of Appellant's argument. Our analysis begins with an exploration of the path through which Appellant sought additional benefits. Section 27-14-404(b) provides:

> (b) Any employee awarded benefits under W.S. 27-14-405 or 27-14-406 is not eligible for benefits under subsection (a) of this section unless the employee has returned to gainful employment and following employment, undergoes additional surgery not reasonably contemplated before the award for permanent impairment or disability and then only for a reasonable period of recuperation, confinement for medical care during the actual period of confinement **or unless application is made and an award is granted under W.S. 27-14-605.**

Wyo. Stat. Ann. § 27-14-404(b) (LexisNexis 2017) (emphasis added).

[¶30] Because Appellant did not return to gainful employment following his workplace injury, his only available course was to make an application under § 27-14-605. That statute states in pertinent part:

> (a) If a determination is made in favor of or on behalf of an employee for any benefits under this act, an application may be made to the division by any party within four (4) years from the date of the last payment for additional benefits or for a modification of the amount of benefits on

the ground of increase or decrease of incapacity **due solely to the injury**, or upon grounds of mistake or fraud. The division may, upon the same grounds and within the same time period, apply for modification of medical and disability benefits to a hearing examiner or the medical commission, as appropriate.

Wyo. Stat. Ann. § 27-14-605(a) (emphasis added).

[¶31] To obtain a modification and obtain additional temporary total disability benefits under these statutes, Appellant was required to establish that he suffered an increase of incapacity due solely to the 2008 workplace injury. *See In re Osenbaugh*, 10 P.3d 544, 550 (Wyo. 2000) ("The only prerequisites of § 27-14-605(a) are whether the claimant has previously been awarded either TTD or permanent partial disability benefits and, not meeting the first alternative of § 27-14-404(b), has met the second alternative by filing a petition to reopen and modify under § 27-14-605(a)."). Section 27-14-605 requires proof to a reasonable degree of medical certainty. *Kenyon v. State ex rel. Wyoming Workers' Safety & Comp. Div.*, 2011 WY 14, ¶ 23, 247 P.3d 845, 852 (Wyo. 2011) (citing Wyo. Stat. Ann. § 27-14-605(c)(ii)).

[¶32] After assessing all of the evidence before it, the Medical Commission concluded that Appellant did not meet his burden; reasoning in pertinent part:

> 32. [Appellant] failed to show an increase in his incapacity due solely to the work injury as required by Wyo. Stat. Ann. § 27-14-605(a). [Appellant] never returned to any form of work or activity after his work injury on March 2008. He has had persistent complaints of low back and leg pain since March 2008. He has repeatedly claimed he has difficulty walking or performing daily activities. These are the same claims made immediately after the work injury in 2008 an again in 2010 and 2011 at the time of his impairment rating evaluations. These are the same complaints which led Dr. Rizzolo to perform surgery. Unfortunately, these are still [Appellant's] complaints today even after the surgery in April 2013.

33. [Appellant] failed to show by a preponderance of the evidence an increase in incapacity to a reasonable degree of medical certainty due solely to the work injury which entitles him to additional TTD benefits after February 1, 2014.

[¶33] Our review of the record confirms that the Medical Commission's decision is supported by substantial evidence; that is, as a reasonable mind might accept it as adequate to support the conclusion. The record supports the conclusion that Appellant's complaints were the same before and after the surgery, with no increase in incapacity. In addition, testimony and other evidence, *see supra* ¶¶ 22-23, showed the condition requiring the 2013 surgery was at least in large part due to a degenerative process, and that it was not therefore solely the result of a traumatic event—the work injury. Testimony from Dr. Belleville, for instance, explained that the reported problems with Appellant's low back that necessitated the 2013 surgery were due to the degenerative process. Dr. Belleville also opined that Appellant "has degenerative arthritis at many levels of the low back, although not caused by a single fall on March 11, 2008" and further testified that:

The apparent spondylolisthesis was most likely a consequence of the preexistent and significant degenerative process underway in this 68 year-old man who also is severely obese and a several decade cigarette smoker. His severe obesity, advancing age, and pre-existing degenerative arthritis were the primary reasons that the spondylolisthesis apparently progressed over the years, not as a result of pars fractures due to an isolated event on one occasion in March 2008.

In sum, Dr. Belleville did not believe that Appellant's "lumbar fusion [surgery in 2013] was causally related to the fall onto his low back of more than five years prior to that surgery, particularly in light of the above-mentioned alternative explanation."

[¶34] Nevertheless, Appellant points out that both of his doctors (Drs. Rossetto and Rizzolo) certified him as temporarily totally disabled after the 2013 surgery, and he argues that this fact should carry the day. However, this conflict in the evidence is not dispositive. *Glaze v. State ex rel. Wyoming Workers' Safety & Comp. Div.*, 2009 WY 102, ¶ 16, 214 P.3d 228, 233 (Wyo. 2009) ("A physician's certification that a claimant is temporarily totally disabled is evidence of an increase in incapacity; however, it is not determinative.") "Thus, in order to meet his burden of proof, the claimant must present evidence showing an increase in his incapacity since the permanent partial disability award." *Id.* Overwhelming evidence to that effect, as required by the standard of review stated above, simply does not exist in this record.

[¶35] The Medical Commission had reason to discount the opinions of Appellant's doctors on the issue of causation. Dr. Rizzollo's testimony, for example, was uncertain and equivocal on the issue of causation, and his opinions were based on an inaccurate and incomplete medical history. "It is the obligation of the trier of fact to sort through and weigh the differences in evidence and testimony, including that obtained from medical experts." *Taylor v. State ex rel. Wyoming Workers' Safety & Comp. Div.*, 2005 WY 148, ¶ 16, 123 P.3d 143, 148 (Wyo. 2005). The Medical Commission was charged with determining the credibility of the witnesses and weighing the evidence, and its determination will be overturned only if it is clearly contrary to the great weight of the evidence. *Id.* We have explained:

Where the testimony of a disinterested witness is not directly contradicted but there are circumstances which controvert the testimony or explain it away, or if such testimony is clouded with uncertainty and improbability, or otherwise appears to be unreliable or unworthy of belief, the trier of fact is not bound to accept it. Justice does not require a court or jury to accept as an absolute verity any statement of a witness merely because it is not directly or specifically contradicted by other testimony, and there are many things which may properly be considered in determining the weight that should be given the direct testimony of a witness even though no adverse verbal testimony is adduced. If such testimony is evasive, equivocal, con-

fused, or otherwise uncertain, it may be disregarded.

*Id.* (quoting *Krause v. State ex rel. Wyo. Workers' Comp. Div.*, 803 P.2d 81, 83 (Wyo. 1990)).

[¶36] In conclusion, the evidence reveals that there was no increase in incapacity, and that any claimed increase was due to at least in part a degenerative process, and that it was therefore not solely caused by his work injury in 2008. Thus, the Medical Commission's conclusion that Appellant was not entitled to benefits under Wyo. Stat. Ann. § 27-14-605 is supported by substantial evidence.

**Is Wyo. Stat. Ann. 27-14-605 impermissibly vague and ambiguous?**

[¶37] Appellant asserts that § 27-14-605(a) is impermissibly unclear. Specifically, he says that the phrase "increase or decrease of incapacity due solely to the injury" is subject to varying interpretations, rendering it ambiguous. We disagree.

[¶38] Statutory interpretation is a question of law, which requires *de novo* review. *Wyodak Res. Dev. Corp. v. Wyoming Dep't of Revenue*, 2017 WY 6, ¶ 15, 387 P.3d 725, 730 (Wyo. 2017). Our aim is to ascertain the legislature's intent as reflected in the language of the statute, and the first step is to determine, as a matter of law, if the statute is clear or ambiguous. *Id.* ¶ 25, 387 P.3d at 732. The plain and ordinary meaning of the words the legislature used is considered foremost to determine if the statute is ambiguous. *Id.* To be considered clear and unambiguous, the statute's wording must be such that reasonable persons are able to agree on its meaning with consistency and predictability. *Id.* On the other hand, ambiguity arises when the language is vague or uncertain and subject to varying interpretations. *Id.*

[¶39] We have little trouble finding § 27-14-605(a) to be clear and unambiguous. The phrase "increase or decrease of incapacity due solely to the injury" is plain and straightforward. The term "solely" seems to be the core of Appellant's consternation, and so we will focus on it. While that term is not statutorily defined, its meaning can be found in common dictionaries. *See, e.g., City of Torrington v. Cottier*, 2006 WY 145, ¶ 8, 145 P.3d 1274, 1278 (Wyo. 2006) (consulting dictionaries for plain meaning of word). "Solely" is commonly defined as "to the exclusion of all else." Merriam Webster's Collegiate Dictionary 114 (10th ed. 2000). In other words, solely means the sole cause. A legal dictionary defines "sole cause" as "[t]he only cause that, from a legal viewpoint, produces an event or injury." Black's Law Dictionary 266 (10th ed. 2014). We conclude that the legislature intended that the prior work injury must be the sole cause of the increased incapacity, and that if there are other causes as well, no benefits can be awarded under § 27-14-605(a).

[¶40] Because the statute is clear and unambiguous, Appellant's contention to the contrary fails as a matter of law. His argument seems to be more of a disagreement with the policy and resulting narrow scope of the statute, but our job is not to make the law, but only to interpret and apply it. *Dockter v. State*, 2017 WY 63, ¶ 19, 396 P.3d 405, 409 (Wyo. 2017).

**Did the Medical Commission misapply the second compensable injury rule?**

[¶41] Appellant says that the Medical Commission misapplied the second compensable injury rule because it required him to prove that he suffered a second injury. Whether the Medical Commission correctly applied the rule is a question of law that we review *de novo. See supra,* ¶ 28.

[¶42] The portion of the Medical Commission's order that Appellant takes issue with states:

34. [Appellant] has claimed as an alternative theory that he is entitled to TTD benefits due to a second compensable injury. "Medical and temporary total disability benefits awarded at a later date pursuant to the second compensable injury rule are not among the benefits the statute (Wyo. Stat. § 27-14-605(a)) controls." *Kaczmarek v. Stat [State] ex re. [rel.], Wyo. Workers' Safety and Comp. Div.*, 2009 WY 110, ¶ 10, 215 P.3d 277 (Wyo. 2009) [parenthetical material added] quoting *Yenne-Tully v.*

State ex rel. Wyo. Workers' Safety and Comp. Div., 2002 WY 90, ¶ 10, 48 P.3d 1057 (Wyo. 2002). Under the second compensable injury rule [Appellant] only has to demonstrate that it is more probable than not that his first and second injuries are related. *Pino v. State ex rel. Wyo. Workers' Safety and Comp. Div.*, 996 P.2d 679, 685 (Wyo. 2000)[.] But he must show a second injury.

It is the last sentence that Appellant says is wrong and shows that the Medical Commission misapplied the rule. He contends that the Medical Commission incorrectly required him to prove that he had suffered a second injury, rather than showing that his initial compensable injury ripened into a condition requiring additional medical intervention.

[¶43] We are not persuaded by Appellant's argument. This Court recently explained:

> Wyoming law recognizes that a single incident at work can give rise to more than one compensable injury. This is referred to as the second compensable injury rule and applies when an initial compensable injury ripens into a condition requiring additional medical intervention. In order to show that an injury qualifies under the second compensable injury principle, the claimant must show, by a preponderance of the evidence, that it is more probable than not that a causal connection exists between the first and second injuries. This standard does not require the claimant to prove to a degree of medical certainty that the second injury is due solely to the first injury, and medical testimony that establishes the first injury contributed to the second injury, or most likely caused the second injury, or probably caused the second injury suffices under this standard. However, medical testimony in terms of can, could, or possibly is insufficient to meet a claimant's burden of proof.

*Hardy v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2017 WY 42, ¶ 12, 394 P.3d 454, 457-58 (Wyo. 2017) (citations and quotation marks omitted).

[¶44] As is clear from our precedent, there is no distinction between the phrases as Appellant suggests—they are used interchangeably in the context of the second compensa-

ble injury rule. Accordingly, the Medical Commission did not misapply the rule.

**Was there substantial evidence to support the Medical Commission's conclusion that Appellant did not suffer a second compensable injury?**

[¶45] Appellant asserts that the decision of the Medical Commission denying him temporary total disability benefits under the second compensable injury rule is not supported by substantial evidence. The essence of his argument is that the Medical Commission put "inordinate emphasis" on the opinions of the Division's expert doctors, and not enough on the opinions of his own expert physicians. The applicable standard of review (substantial evidence) is set forth in the discussion of the first issue, *see supra* ¶ 27, and need not be repeated here.

[¶46] As we have just explained, the Medical Commission, as the trier of fact, is charged with weighing the evidence and determining the credibility of witnesses. *Baxter v. Sinclair Oil Corp.*, 2004 WY 138, ¶ 9, 100 P.3d 427, 430-31 (Wyo. 2004). Accordingly, its findings of fact are given deference. and no decision will be overturned unless it is clearly contrary to the overwhelming weight of the evidence. *Id.* Concerning medical opinion testimony, this Court has explained:

> When presented with medical opinion testimony, the hearing examiner, as the trier of fact, is responsible for determining relevancy, assigning probative value, and ascribing the relevant weight to be given to the testimony. In weighing the medical opinion testimony, the fact finder considers: (1) the opinion; (2) the reasons, if any, given for it; (3) the strength of it; and (4) the qualifications and credibility of the witness or witnesses expressing it. Demonstrating evidentiary contradictions in the record does not establish the ruling was irrational, but we do examine conflicting evidence to determine if the agency reasonably could have made its. finding and order based upon all of the evidence before it.

*Id.* (citations and quotation marks omitted).

[¶47] A review of the record under the controlling standard of review convinces us

that the Medical Commission properly weighed the evidence and made appropriate determinations as to the credibility of the witnesses. *Contra Glaze,* ¶ 29, 214 P.3d at 235. It was not out of bounds, for example, in discounting Dr. Rossetto's testimony somewhat because he was not a specialist in lumbar spines. Nor was it mistaken in weighing Dr. Rizzollo's testimony less than others because he was not fully familiar with Appellant's medical history. Based on the evidence before it, the Medical Commission's conclusion was not irrational or without substantial evidentiary support.

**Did a mistake occur with the determination and award of permanent partial impairment benefits?**

[¶48] Lastly, Appellant asserts that he is entitled to additional benefits under § 27-14-605(a) because of a mistake in his permanent partial impairment rating. He notes that he was repeatedly told that he was not a surgical candidate, as noted above. After he was assigned a permanent partial rating, Dr. Rizzolo determined that he was a surgical candidate. Therefore, he contends, he could not have reached ascertainable loss at the time of the permanent partial rating, and it was improper to make one. In other words, temporary total disability benefits should have continued. The Medical Commission determined that Appellant failed to establish that a mistake was made, finding in pertinent part:

16. At the contested case hearing, counsel for [Appellant] asserted in passing, that a mistake was made in the award of PPI benefits which entitles [him] to claim additional TTD benefits under Wyo. Stat. § 27-14-605. This was not an issue raised by [Appellant] in the pretrial conference or clearly articulated in his disclosure statement. As best as the Medical Hearing Panel can discern, the argument is that [Appellant] was not stable at the time of his impairment evaluations and PPI award,

did not have an ascertainable loss, and therefore, his TTD benefits were terminated based on that mistake. However, just as in *Hernandez,* [Appellant's] medical condition of spondylolisthesis and stenosis was well documented in 2008 and in repeated imaging studies and medical reports right up to the time of impairment award (and thereafter). [Appellant] was on notice that surgery in the future might be necessary, he failed to show a material mistake. [Appellant] has not challenged his PPI award in these proceedings.

[¶49] The Medical Commission's reliance on the noted evidence is reflected in the record, making proper its application of *In re Hernandez,* 8 P.3d 318, 323 (Wyo. 2000). Furthermore, that Dr. Rizzolo thought surgery was appropriate does not *ipso facto* prove that a mistake was made. Perhaps the doctor was wrong in thinking surgery was warranted, which is what other doctors determined, and in fact Appellant has not had significant relief from that surgery. There is just simply no overwhelming evidence that Drs. Ruttle and Belleville made a mistake when they decided that Appellant had reached an ascertainable loss and performed their evaluations for a permanent impairment rating, as the standard of review requires. *Stallman v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2013 WY 28, ¶ 40, 297 P.3d 82, 94 (Wyo. 2013) ("[T]he Commission's role, as the trier of fact, entitles it 'to determine what probative value to assign to testimony, and to resolve differences in expert medical opinions.'"). No mistake of material fact has been established.

[¶50] Affirmed.