KAUTZ, Justice.
[¶1] In 2014, Pete Hart[1] sought permanent total disability benefits for a back injury he sustained at work in 2005. The Workers' Compensation Division (the Division) denied *655 benefits, and the Medical Commission Hearing Panel (Medical Commission) upheld the Division's denial of benefits after a contested case hearing. We affirm.
ISSUES
[¶2] Mr. Hart raises two issues in this appeal:
I. The Medical Commission's Findings of Fact, Conclusions of Law, and Order was vacated and remanded for further proceedings by the District Court. The Supplemental Findings of Fact, Conclusions of Law, and Order came to the same conclusion and this time was affirmed by the District Court, although the [Medical] Commission did not take any additional evidence. Was it proper to reverse and remand, rather than simply reversing and awarding benefits, and did the supplemental order cure the inadequacies identified by the District Court in the original Order?
II. Permanent total disability is "the loss of use of the body as a whole or any permanent injury ... which ... incapacitates the employee from performing work at any gainful occupation for which he is reasonably suited ...." Pete Hart injured his back in a work accident. He continued to work but his back pain increased throughout surgery, steroid injections and pain medications. He was diagnosed with ALS [amyotrophic lateral sclerosis ] two months before he was certified for [permanent total disability.] Was the work injury the cause of [his permanent total disability]?
FACTS
[¶3] On August 24, 2005, Mr. Hart injured his back while working at Solvay Chemicals, Inc. (Solvay). The Division opened a case and thereafter approved temporary disability benefits. In April 2006, Mr. Hart was evaluated for an impairment rating by Dr. Michael Kaplan. Dr. Kaplan recognized that Mr. Hart had returned to work by this time and concluded he had a total whole person impairment rating of 12%. On May 17, 2006, the Division approved Mr. Hart's request for permanent partial impairment benefits.
[¶4] Throughout the years after his injury, Mr. Hart received treatment for his continuing back pain from Dr. Raymond Bedell. His treatment included steroid injections and the use of pain medications. Despite his back pain, Mr. Hart continued to work at Solvay as a boiler operator. Mr. Hart explained that Solvay's policy did not allow him to take his pain medication while he was working, so he would wait to take it until after his shift had ended.
[¶5] In July 2013, Mr. Hart experienced a swollen tongue and slurred speech while at work and was taken from Solvay to the emergency room at Memorial Hospital of Sweetwater County via ambulance. While the records from the emergency room visit are not in the record, it appears the emergency room staff was unable to determine the cause of Mr. Hart's condition. However, for reasons undisclosed by the record, Mr. Hart attributed his condition to a reaction to one of his pain medications (Lortab ). Mr. Hart never returned to work. Mrs. Hart testified her husband was told by his supervisor at Solvay that he was not allowed to return to work until he was "off pain medication."
[¶6] Mr. Hart continued his back treatment with Dr. Bedell, and in October 2013, Dr. Steven Ringel at the University of Colorado Hospital diagnosed Mr. Hart with amyotrophic lateral sclerosis (ALS). On January 21, 2014, Mr. Hart submitted an application for permanent total disability benefits claiming the back injury he sustained in 2005 prevented him from working in his current position at Solvay. He claimed he could not work because his ALS increased the pain associated with his back injury and he must continuously take pain medication. He explained Solvay's policy prevented him from taking pain medication before or during his shift. Mr. Hart attached a certification from Dr. Bedell that identified Mr. Hart's physical complaints that prevented him from returning to work as: "ALS, failed back, DDD, sciatica."[2]
*656 [¶7] After receiving his application, the Division referred Mr. Hart to Dr. Kaplan for an independent medical examination. Dr. Kaplan noted that at the time of the examination (May 2014), Mr. Hart suffered a right foot drop and drooling, had lost his ability to speak, and was using a feeding tube, all of which were attributable to ALS. Dr. Kaplan concluded: "Mr. Hart's current disability status, from the standpoint of an inability to return to his previous level of participation in the work setting, stems more from the recent development of ALS than from injury residual." Dr. Kaplan further stated: "In my opinion, if it were not for the ALS, [Mr. Hart] may have been able to manage his normal work duties, with chronic pain medications and injections continuing, as that was a successful regimen / pattern over the years." On June 10, 2014, the Division relied on Dr. Kaplan's report and denied Mr. Hart's request for permanent total disability benefits, determining Mr. Hart could not return to work because of ALS and not his back injury. Mr. Hart objected to the Division's determination. The Division referred the matter to the Medical Commission under Wyo. Stat. Ann. § 27-14-601(k)(v) (LexisNexis 2017).
[¶8] Mr. Hart and Dr. Bedell both died before the Medical Commission could conduct a hearing on this matter. Unfortunately, they were not deposed before they died. At the hearing, Mrs. Hart testified about her husband's back injury in 2005, his subsequent treatment, and the fact that he had thereafter returned to work. However, Mrs. Hart did not know how often or when Mr. Hart would use his pain medications and she did not know if he used them at work. Mrs. Hart also testified Dr. Bedell had suggested that Mr. Hart apply for permanent total disability benefits due to his back injury approximately two to three years before he actually submitted his application. Based upon Mrs. Hart's testimony and the medical records submitted to the Medical Commission, Mr. Hart argued he was entitled to total permanent disability benefits under the odd lot doctrine.[3]
[¶9] Dr. Kaplan did not testify at the hearing, but Mr. Hart submitted the transcript of Dr. Kaplan's deposition taken a year earlier. Dr. Kaplan testified consistently with the report from his 2014 independent medical examination of Mr. Hart. He agreed that Mr. Hart was unable to return to his position at Solvay but stated the reason for that permanent incapacitation was due to ALS and not the back injury. He also testified there is no correlation between a back injury and a progressive nerve degenerative disease like ALS.
[¶10] After considering Mrs. Hart's testimony, Dr. Kaplan's deposition and report, and the medical records, the Medical Commission concluded Mr. Hart had not established his inability to return to work was related to his back injury. The Medical Commission stated it gave great weight to Dr. Kaplan's independent medical examination, but also found Mrs. Hart's testimony credible. It also noted that certain aspects of Dr. Bedell's certification could not be clarified due to his death. Mr. Hart appealed the decision to the district court. The court concluded substantial evidence did not exist to support the Medical Commission's decision to give great weight to Dr. Kaplan's opinion because it was speculative. The court also determined substantial evidence did not support the Medical Commission's treatment of Mrs. Hart's testimony. While the Medical Commission found her testimony credible, it did not appear to consider her testimony when it analyzed the issues. The district court opted to remand the case in lieu of simply reversing the decision because "a court of review risks missing material evidence in the record if it decides the sufficiency *657 of the evidence in the absence of full and complete findings by the agency which are argued in the parties' briefs on appeal."
[¶11] On remand, the Medical Commission chose to simply hear further argument from the parties instead of receiving any additional evidence. In its subsequent order, the Medical Commission reached the same conclusion-Mr. Hart failed to prove by a preponderance of the evidence that his work-related back injury from 2005 was the reason he was unable to continue working after July 2013. However, the Medical Commission provided far more specific details regarding its conclusions in its order after the remand than it did in its initial order. The Medical Commission explained that, although Dr. Bedell's certification, which was given some months after Mr. Hart's ALS diagnosis, included "failed back" as one of his listed disabilities, the medical records did not establish that Dr. Bedell's assessment of Mr. Hart's back injury ever changed. The Medical Commission determined Dr. Kaplan's evaluation was more complete, comprehensive and objective, and afforded it greater weight than Dr. Bedell's certification. Finally, the Medical Commission explained that, while it found Mrs. Hart's testimony credible, it was general in nature and lacked specificity. For example, she testified that Dr. Bedell had spoken to Mr. Hart about applying for permanent total disability benefits, but she did not know when the conversation occurred. Further, she did not know if Mr. Hart had taken his pain medication before his emergency room visit in July 2013, and she did not know his normal medication routine.
[¶12] Mr. Hart again appealed the Medical Commission's decision to the district court. The court determined that the Medical Commission appropriately considered Mrs. Hart's testimony in the second order and properly concluded that some of her relevant testimony was general in nature and lacked specificity. The district court continued to express concern with the Medical Commission's reliance on Dr. Kaplan's report and deposition, which the court maintained was speculative. However, it concluded Dr. Kaplan's opinions were irrelevant because the Medical Commission had also determined that Mr. Hart had failed to carry his burden of demonstrating he was disabled by his work-related injury. The district court concluded the medical records did not corroborate Mr. Hart's claim that his back condition worsened over time and there were no medical records that would support Mr. Hart's belief that his pain medication caused the emergency room visit. Because the Medical Commission's decision was supported by the evidence, the district court affirmed the decision. Mr. Hart filed a timely notice of appeal.
DISCUSSION
Did the district court appropriately remand the claim to the Medical Commission?[4]
[¶13] Mr. Hart argues the district court erred when it initially remanded his claim to the Medical Commission for further findings instead of reversing the decision and awarding benefits. Mr. Hart asserts that the district court's review of the Medical Commission's first order is similar to what occurred in Rodgers v. State ex rel. Wyo. Workers' Safety & Comp. Div. , 2006 WY 65, 135 P.3d 568 (Wyo. 2006). However, a review of the applicable rules of appellate procedure and Rodgers leads to the conclusion that the district court appropriately remanded Mr. Hart's claim to the Medical Commission for further proceedings.
[¶14] Wyoming Rule of Appellate Procedure 12.09 governs the extent of a district court's review of an administrative action and subsection (f) states: "The district court's judgment shall be in the form of an order affirming, reversing, vacating, remanding or *658 modifying the order for errors appearing on the record." W.R.A.P. 12.09(f). We have stated that generally, if there is a problem with the agency's action, the proper course is to remand the matter to the agency for further consideration:
If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. The reviewing court is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry.
Decker v. State ex rel. Wyo. Med. Comm'n , 2005 WY 160, ¶ 36, 124 P.3d 686, 697 (Wyo. 2005) (quoting Bush v. State ex rel. Wyo. Workers' Comp. Div ., 2005 WY 120, ¶ 12, 120 P.3d 176, 180, 181 (Wyo. 2005) ).
[¶15] We recognized this general rule in Rodgers , but determined it was appropriate under the narrow circumstances found in that case to reverse the matter and direct the Medical Commission to enter an order awarding benefits. Rodgers , ¶ 2, 135 P.3d at 571. In Rodgers , the Medical Commission determined a medical expert's opinion was persuasive but misstated what the opinion was. Based on that erroneous understanding of the opinion, the Medical Commission denied benefits. Id ., ¶ 51, 135 P.3d at 585. On review, we agreed the expert's opinion was persuasive, but determined the claimant was entitled to benefits when the expert's actual opinion was considered. Id ., ¶ 52, 135 P.3d at 585. Because this Court simply gave effect to the expert's opinion and did not question the Medical Commission's credibility determinations or the weight it attributed to any piece of evidence, we determined the matter need not be remanded for further agency proceedings. Id .
[¶16] The circumstances from Rodgers are not present here. The district court found the Medical Commission failed to consider Mrs. Hart's testimony in its determination, even though it considered her testimony credible. Further, the Medical Commission failed to consider the strength of, and reasons for, Dr. Kaplan's opinions before assigning great weight to his evaluation. Therefore, the Medical Commission needed to fully consider all of the evidence presented before the reviewing court could fairly review the issues. The district court recognized this when it stated: "The Court remands in lieu of reversal because a court of review risks missing material evidence in the record if it decides the sufficiency of the evidence in the absence of full and complete findings by the agency which are argued in the parties' briefs on appeal." To do otherwise would result in a de novo review by the district court regarding witnesses' credibility and the weight of the evidence-a review that has been repeatedly disfavored by this Court. See Bush , ¶ 12, 120 P.3d at 180-81 ; Decker , ¶ 36, 124 P.3d at 697 ; Rodgers , ¶ 42, 135 P.3d at 582. The district court appropriately remanded Mr. Hart's claim for further findings and conclusions by the Medical Commission.
Was the Medical Commission's decision supported by substantial evidence?
[¶17] Mr. Hart argues the Medical Commission's determination that his disability was caused by ALS and not his work-related back injury is not supported by substantial evidence. When reviewing an administrative agency's decision, we review the case as if it had come directly to this Court from the administrative agency and give no deference to the district court's decision. Kebschull v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div. , 2017 WY 94, ¶ 26, 399 P.3d 1249, 1255 (Wyo. 2017). Our review of an administrative agency's decision is governed by Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2017):
(c) To the extent necessary to make a decision when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule *659 of prejudicial error. The reviewing court shall:
....
(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
(B) Contrary to constitutional right, power, privilege or immunity;
(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;
(D) Without observance of procedure required by law; or
(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.
[¶18] Using this standard, we consider whether substantial evidence exists in the record to support the Medical Commission's conclusion that Mr. Hart failed to carry his burden of demonstrating his disability was caused by his work-related back injury. Dale v. S & S Builders, LLC , 2008 WY 84, ¶ 22, 188 P.3d 554, 561 (Wyo. 2008). We have explained the substantial evidence test as follows:
In reviewing findings of fact, we examine the entire record to determine whether there is substantial evidence to support an agency's findings. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. It is more than a scintilla of evidence.
Id . (quoting Newman v. State ex rel. Wyo. Workers' Safety & Comp. Div. , 2002 WY 91, ¶ 12, 49 P.3d 163, 168 (Wyo. 2002) ). We have re-stated this test in the specific circumstance we have here-where the agency determines the claimant has failed to carry his burden of proof:
If the hearing examiner determines that the burdened party failed to meet his burden of proof, we will decide whether there is substantial evidence to support the agency's decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole.
Watkins v. State ex rel. Wyo. Med. Comm'n , 2011 WY 49, ¶ 16, 250 P.3d 1082, 1086 (Wyo. 2011) (quoting Dale , ¶ 22, 188 P.3d at 561 ). Because the administrative body "is the trier of fact and has the duty to weigh the evidence and determine the credibility of witnesses," we will defer to the Medical Commission's findings of fact unless they are clearly contrary to the overwhelming weight of the evidence in the record. Dale , ¶ 11, 188 P.3d at 558-59. Further, "our review of any particular decision turns not on whether we agree with the outcome, but on whether the agency could reasonably conclude as it did, based on all the evidence before it." Kebschull , ¶ 28, 399 P.3d at 1256.
[¶19] Before getting into the specifics of Mr. Hart's claim, it is important to recognize that "[a] claimant for workers' compensation benefits must prove all of the essential elements of his claim by a preponderance of the evidence." In re Vandre , 2015 WY 52, ¶ 22, 346 P.3d 946, 953 (Wyo. 2015) (quoting Hayes v. State ex rel. Wyo. Workers' Safety & Comp. Div. , 2013 WY 96, ¶ 14, 307 P.3d 843, 847 (Wyo. 2013) ). Further, it is the appellant's burden on appeal to demonstrate the Medical Commission's findings of fact were not supported by substantial evidence. Watkins , ¶ 16, 250 P.3d at 1086. Using this framework and the appropriate standard of review, we conclude the Medical Commission's decision that Mr. Hart failed to carry his burden of proving his disability was caused by his work-related injury is supported by substantial evidence in the record.
[¶20] Mr. Hart argued to the Medical Commission that he was entitled to permanent total disability benefits due to his 2005 back injury. The worker's compensation statutes define "permanent total disability" as: "the loss of use of the body as a whole or any permanent injury certified under W.S. 27-14-406, which permanently incapacitates the employee from performing work at any gainful *660 occupation for which he is reasonably suited by experience or training[.]" Wyo. Stat. Ann. § 27-14-102(a)(xvi) (LexisNexis 2017). "Injury" is defined as:
[A]ny harmful change in the human organism other than normal aging and includes damage to or loss of any artificial replacement and death, arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer and incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extrahazardous duties incident to the business.
Wyo. Stat. Ann. § 27-14-102(a)(xi) (LexisNexis 2017).
[¶21] Additionally, a claimant may be entitled to permanent total disability benefits under the odd lot doctrine. As stated supra , a claimant who is not actually permanently totally disabled may receive benefits under the odd lot doctrine if the claimant's disability and other factors make the claimant de facto unemployable. In re Pickens , 2006 WY 54, ¶ 14, 134 P.3d 1231, 1236 (Wyo. 2006). In order to prevail using the odd lot doctrine, a claimant must make a prima facie showing that "(1) 'he is no longer capable of working at the job in which he was employed at the time of his injury,' and (2) 'the degree of obvious physical impairment, coupled with other facts, such as mental capacity, education, training, or age' qualify him for odd lot treatment." Id . (quoting City of Casper v. Bowdish , 713 P.2d 763, 765 (Wyo. 1986) ). With respect to the first factor, the claimant must demonstrate a causal connection between a compensable workplace injury and the claimant's inability to work at the job he held at the time of the injury. Id ., ¶ 30, 134 P.3d at 1240-41. Once the claimant has made a prima facie showing, the burden shifts to the Division "to show that light work of a special nature which the claimant could perform is available." Id ., ¶ 14, 134 P.3d at 1236.
[¶22] Whether Mr. Hart was seeking permanent total disability benefits under Wyo. Stat. Ann. § 27-14-406 or under the odd lot doctrine, he was required to show he was disabled due to a work-related injury. There is no dispute Mr. Hart suffered a work-related back injury in 2005, and the Division properly awarded him benefits for that injury at the time. There is also no dispute Mr. Hart continued to seek medical treatment for his back pain up to the point he was taken via ambulance from Solvay to the emergency room for slurred speech and a swollen tongue in July 2013. Unfortunately, the resolution of whether the work-related back injury was responsible for Mr. Hart's inability to return to work after July 2013 is not as clear. The Medical Commission's review was complicated by several factors including Mr. Hart's and Dr. Bedell's deaths which left unanswered questions, and the fact that Mr. Hart did not apply for permanent total disability benefits until almost six months after he could not return to work and four months after his ALS diagnosis.
[¶23] Taking into consideration all of the evidence, the Medical Commission concluded Mr. Hart failed to prove by a preponderance of the evidence that his disability and inability to return to work was the result of his work-related back injury and not his ALS symptoms. July 2013 is a pivotal time in this sequence as Mr. Hart never returned to work after his emergency room visit. The emergency room visit was not the result of back pain; instead, Mr. Hart was suffering from a swollen tongue and slurred speech. For some time, the cause of those symptoms was unknown. Mrs. Hart testified that the physicians were unable to diagnose Mr. Hart's symptoms during his emergency room visit, but that Mr. Hart "thought it might have been medication or something. He didn't know." Approximately two weeks after the emergency room visit, Mr. Hart told Dr. Bedell that he believed his swollen tongue and slurred speech were "attributed to a generic [L]ortab pill." While that may have been Mr. Hart's belief, there is nothing in the record that explains why he had that belief. The emergency room records are not in the administrative record, making it unknown if a medical provider at the emergency room may have suggested that possibility. The medical records that are in the administrative record indicate Dr. Bedell did not believe Lortab was the root of Mr. Hart's symptoms because he continued to prescribe *661 the medication thereafter. Of course, by the time Mr. Hart applied for benefits, his health care providers knew the symptoms were caused by ALS and not a reaction to Lortab.
[¶24] In his application for benefits, Mr. Hart asserted he was unable to work because "of [his] back injury and not being able to take the proper pain meds [he] needs to control the pain." He explained that, due to a Solvay policy, he could not take his pain medication right before or during his shift, which resulted in severe pain. Mrs. Hart echoed this statement in her testimony:
Q. Did he ever go back to work after that date?
A. No.
Q. And do you know why he didn't go back to work after that date?
A. No.
Q. Okay.
A. Pain medication.
Q. What do you mean by that?
A. They said that he had to be off pain medication to return to work.
Q. And what pain medication was he taking at that time?
A. He was taking pain medication for his back.
Q. So he was not allowed to return to work because he was taking pain medication for his back?
A. That's what we were told, yes.
Q. Okay. Now, was it your understanding at least that Solvay had a policy of not having their employees using pain medications while they were at work?
A. Yes.
[¶25] While Mr. and Mrs. Hart stated Mr. Hart could not return to work because of his use of pain medication, the overall state of the record calls that fact into question. The Medical Commission was not provided Solvay's policy regarding the use of pain medications, and there is nothing in the record that documents Mr. Hart was told by anyone at Solvay that he could not return to work until he was no longer using pain medications. This is significant because Mr. Hart continued to work while treating his back with pain medication for many years before July 2013. Mr. Hart told Dr. Kaplan that he would work his shift without pain medication and then take it at the end of the work day. Mrs. Hart was unable to shed any light on when and how often Mr. Hart was taking his pain medication and if that routine had changed leading up to July 2013:
Q. Do you know if Pete was taking his pain medication while he was at work prior to this incident in the summer of 2013?
A. No.
Q. What was your understanding of how Pete utilized his pain medications for his back?
A. He used them as they were prescribed on the bottle.
Q. Did he have a routine that you were aware of?
A. No.
[¶26] Shortly after his emergency room visit, Mr. Hart provided Solvay with a sick leave verification form from Dr. Bedell that made no mention of back pain. Instead, Dr. Bedell stated that Mr. Hart's disability, which began on July 27, 2013, was due to "oral cellulitis /swelling" and that he expected the disability to end in late September 2013. On October 4, 2013, Dr. Ringel provided a physician statement to Solvay diagnosing Mr. Hart with ALS and indicating that he expected Mr. Hart would never return to work. In early January 2014, Mr. Hart requested a release to return to work at Solvay. The medical provider who examined Mr. Hart would not release him for work "due [to] inability to communicate thus raising safety concerns."[5]
*662 [¶27] Without more specific evidence showing Mr. Hart did not return to Solvay after the July 2013 emergency visit because of his back pain, we cannot say the Medical Commission erroneously concluded Mr. Hart failed to carry his burden of demonstrating that his back injury prevented him from working. The symptoms that necessitated the emergency room visit were not the product of his back injury, and the medical records suggest his absence from work thereafter was due to ALS. Although Dr. Bedell certified Mr. Hart's disability included his back injury, that symptom was included in a list: "ALS, failed back, DDD, sciatica." Further explanation of how these varying symptoms played into Mr. Hart's disability was necessary when the certification is taken into consideration with the totality of the medical records. However, further explanation could not be given due to Dr. Bedell's death.
[¶28] The majority of Mr. Hart's argument on appeal focuses on the fact that the Medical Commission relied heavily on what he considers speculative and inappropriate conclusions in Dr. Kaplan's independent medical examination and deposition testimony. We need not consider the appropriateness of Dr. Kaplan's findings. Because Mr. Hart failed to demonstrate by a preponderance of the evidence that he was disabled by his back injury, Dr. Kaplan's findings that Mr. Hart could have returned to work had he not developed ALS are irrelevant.
[¶29] The Medical Commission's conclusion that Mr. Hart failed to carry his burden of demonstrating his inability to return to work was caused by his work-related injury is supported by substantial evidence in the record. Therefore, we affirm the Medical Commission's decision that Mr. Hart is not eligible for permanent total disability benefits.
CONCLUSION
[¶30] The district court appropriately remanded the Medical Commission's first decision for further findings of fact and conclusions of law. The Medical Commission's conclusion that Mr. Hart failed to demonstrate his disability was caused by his work-related back injury is supported by substantial evidence in the record.
[¶31] Affirmed.

Mr. Hart died on January 6, 2015, before his contested case before the Medical Commission had concluded. Mr. Hart's widow, Mona Hart, continued the contested case hearing and subsequent appeal as Mr. Hart's personal representative. For clarity's sake, we will refer to the appellant and claimant as Mr. Hart.

The record does not disclose what "DDD" means. However, it is likely Dr. Bedell was referring to degenerative disc disease, which is "a general term for the condition in which a damaged vertebral disc causes chronic pain - either low back pain (and/or leg pain, sciatica) in the lumbar spine or neck pain (and/or arm pain) in the cervical spine." https://www.spine-heath.com/glossary/degenerative-disc-disease.

"Under the odd lot doctrine, a claimant who is not actually permanently totally disabled is able to receive permanent total disability benefits because the claimant's disability and other factors make the claimant de facto unemployable." In re Pickens , 2006 WY 54, ¶ 14, 134 P.3d 1231, 1236 (Wyo. 2006). Further information regarding the requirements of the odd-lot doctrine will be discussed infra .

Mr. Hart also argues that the supplemental order issued by the Medical Commission after remand did not cure the deficiencies the district court identified in the first order. Whether the deficiencies were cured or not, however, is irrelevant as a stand-alone issue. So long as the Medical Commission's findings of fact and conclusions of law in the supplemental order are supported by substantial evidence in the record, the supplemental order will be affirmed despite the circumstances surrounding the first order. Therefore, we decline to address this as an independent issue because the propriety of the supplemental order will be otherwise determined.

The Division asserts Mrs. Hart also testified on cross-examination that Solvay would not allow Mr. Hart to return to work immediately after his emergency room visit due to his slurred speech. Mrs. Hart did, in fact, answer in the affirmative when asked, "In July 2013, was the reason that Pete's supervisor told him not to return to work, was the slurred speech, correct?" However, that question and answer is not an accurate reflection of Mrs. Hart's testimony as a whole. On direct examination, Mrs. Hart clearly conveyed that Mr. Hart was told he could not return to work until he was off pain medication. On redirect, Mr. Hart's attorney attempted to clarify the inconsistency between Mrs. Hart's direct and cross-examination answers:
Q. Now, I wanted to clarify something because I believe you said two different things - -
A. Okay.
Q. - - in your direct and your cross-examination.
A. Okay.
Q. [Division's attorney] asked you a question that, to the effect that they wouldn't let your husband go back to work because of his slurred speech, and you said yes.
A. Oh, no, that's not true.
Q. And then on direct examination you said they told him he couldn't return to work because he needed to be off his pain medication?
A. Pain medicines, yes.
Q. Is it possible that both of those occurred but one occurred before the other, or do you recall?
A. I do recall that Pete told me that he was told he could not return to work until he was off pain medication.
It appears the Medical Commission chose not to rely on what appears to be a misstatement Mrs. Hart made in her cross-examination. We also decline to use that misstatement against Mr. Hart in his appeal.