2012 WY 135

**The WYOMING DEPARTMENT OF ENVIRONMENTAL QUALITY, Appellant (Respondent),**

**and**

**Yates Petroleum Corporation and Marathon Oil Company, Appellants (Petitioners),**

**v.**

**WYOMING OUTDOOR COUNCIL, Appellee (Cross–Petitioner).**

**Yates Petroleum Corporation and Marathon Oil Company, Appellants (Petitioners),**

**v.**

**Wyoming Outdoor Council, Appellee (Cross–Petitioner)**

**and**

**The Wyoming Department of Environmental Quality, Appellee (Respondent).**

**Nos. S–12–0002, S–12–0003.**

Supreme Court of Wyoming.

Oct. 19, 2012.

Representing Wyoming Department of Environmental Quality: Gregory A. Phillips, Attorney General; Jay A. Jerde, Deputy Attorney General; Michael Barrash, Senior Assistant Attorney General; Christopher M. Brown, Senior Assistant Attorney General. Argument by Mr. Barrash and Mr. Jerde.

Representing Yates Petroleum and Marathon Oil Company: Eric L. Hiser and Matthew Joy, Jorden Bischoff & Hiser, PLC, Scottsdale, Arizona. Argument by Mr. Joy.

Representing Wyoming Outdoor Council: Steve Jones, Jones and Maxon Law Office, Jackson, Wyoming.

Before KITE, C.J., and GOLDEN,* HILL, VOIGT, and BURKE, JJ.

BURKE, Justice.

[¶ 1] This appeal involves the issuance by the Wyoming Department of Environmental Quality (DEQ) of two general permits for the discharge of produced water from coal bed methane operations in northeastern Wyoming. Yates Petroleum Corporation and

* Justice Golden retired effective September 30, 2012.

Marathon Oil Company (Yates and Marathon) appealed the DEQ's decision to the Environmental Quality Council (EQC), challenging certain conditions of the two general permits. The Wyoming Outdoor Council (WOC) also sought EQC review of the DEQ's decision to issue the general permits.

[¶ 2] WOC claimed that general permits were rules, and had to be promulgated through the rulemaking procedures set forth in the Wyoming Administrative Procedure Act. The EQC rejected WOC's claim, and WOC sought judicial review of that decision. The district court reversed the EQC, determining that DEQ was required to promulgate the general permits as rules. Because DEQ had not followed the statutory rulemaking procedures, the district court ruled that the general permits were void. We will reverse the district court's decision on this issue.

[¶ 3] The district court also rejected the argument by Yates and Marathon that WOC was not entitled to seek EQC review of the DEQ's decision to issue the general permits, but was limited to judicial review. The district court ruled that the Wyoming Environmental Quality Act did allow WOC to seek administrative review by the EQC. Yates and Marathon appealed. We will affirm the district court's decision on this issue.

### *ISSUES*

[¶ 4] The parties present a variety of statements of the issues on appeal. We think the issues are appropriately stated as follows:

1. Whether DEQ must employ the statutory rulemaking procedures for the issuance of general permits.
2. Whether WOC was entitled to administrative review by the EQC of DEQ's decision to issue the general permits.

### *FACTS*

[¶ 5] The pertinent facts are relatively simple and not in dispute. In 2006, DEQ issued two general permits governing the discharge of produced water from coal bed methane operations, one permit for discharges into the Pumpkin Creek watershed and one for discharges into the Willow Creek watershed. Both creeks are ephemeral tributaries to the Powder River in northeastern Wyoming. Yates and Marathon filed a notice of appeal challenging certain conditions set forth in these general permits, and seeking a hearing before the EQC. WOC also filed a petition for review of the DEQ's decision to issue the general permits. The EQC and the parties engaged in various hearings and other proceedings with regard to the general permits, but only two issues are raised in this appeal.

[¶ 6] First, WOC filed a motion for summary judgment claiming that DEQ lacked statutory authority to issue the general permits. WOC claimed further that, even if the agency had such authority, general permits were rules of general applicability that could be promulgated only pursuant to the rulemaking procedures set forth in the Wyoming Administrative Procedure Act. The EQC denied WOC's summary judgment motion, and proceeded to a hearing on the parties' appeals. WOC appealed to the district court, claiming that the EQC had erred in ruling that general permits need not be promulgated as administrative rules. The district court agreed with WOC, ruling that general permits must be promulgated as rules, and because DEQ had not followed the statutory rulemaking procedures in issuing the Pumpkin Creek and Willow Creek general permits, the permits were void. DEQ appealed the district court's decision, and Yates and Marathon joined in that appeal, which is before this Court under Docket No. S–12–0002.

[¶ 7] Second, Yates and Marathon asserted before the district court that, under the provisions of the Wyoming Environmental Quality Act, WOC was not entitled to seek review of the general permits before the EQC. Yates and Marathon contended that WOC was required to take its appeal directly to the district court. The district court ruled against Yates and Marathon on this issue, and they appealed. This issue is before us under Docket No. S–12–0003. The two cases have been consolidated for purposes of oral argument and decision.

### STANDARD OF REVIEW

[¶ 8] Judicial review of administrative agency decisions is governed by Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2011). However, the issues now before us involve only interpretation of the relevant statutes. Accordingly, the only question under this statute is whether DEQ's actions were "[i]n excess of statutory jurisdiction, authority or limitations or lacking statutory right." *Id.*, § 16–3–114(c)(ii)(C). Statutory interpretation raises questions of law, which we review *de novo. Sinclair Oil Corp. v. Wyo. Dep't of Revenue,* 2010 WY 122, ¶ 7, 238 P.3d 568, 570 (Wyo.2010).

### DISCUSSION

[¶ 9] The Wyoming Environmental Quality Act prohibits "the discharge of any pollution or wastes into the waters of the state," unless such discharge is "authorized by a permit issued pursuant to the provisions of this act." Wyo. Stat. Ann. § 35–11–301(a)(i). The act directs the agency to establish "[s]tandards for the issuance of permits." Wyo. Stat. Ann. § 35–11–302(a)(v). Those standards were established and, in 1975, were approved by the federal Environmental Protection Agency (EPA). 40 Fed.Reg. 13026 (March 24, 1975).

[¶ 10] After the Wyoming program was approved, DEQ began issuing individual permits for discharges into the waters of the state. An individual permit, in simplified terms, is one applied for by a person, corporation, or other entity who proposes to make a specific discharge of pollutants into a designated body of water. DEQ reviews the application and issues the permit if the proposed discharge complies with established water quality standards. An individual permit, when issued, authorizes the named permit holder to make the specified discharge into the designated waters.

[¶ 11] In 1977, the EPA promulgated regulations allowing for the issuance of general permits as an alternative to individual permits. 42 Fed.Reg. 6841, 6846–53 (Feb. 4, 1977). As later explained by the federal EPA, general permits are meant to cover "discharges of wastewater which result from substantially similar operations, are of the same type wastes, require similar monitoring, and are more appropriately controlled under a general permit rather than by individual permits." 56 Fed.Reg. 52030 (Oct. 17, 1991). General permits were conceived as a "means of coping" with the administrative burden of issuing a large number of individual permits. *Natural Resources Defense Council, Inc. v. Costle,* 568 F.2d 1369, 1381 (D.C.Cir.1977).

[¶ 12] In 1991, DEQ promulgated new regulations establishing a general permit system. Those regulations are now found in Chapter 2 of the Wyoming Water Quality Rules and Regulations ("WWQR & R"). As stated there, a general permit may be issued "to cover a category of discharges ... within a geographic area" that "(A) Involve the same or substantially similar types of operations; (B) Discharge the same types of pollution or wastes; (C) Require the same effluent limitations or operating conditions; (D) Require the same or similar monitoring; and (E) In the opinion of the administrator, are more appropriately controlled under a general permit than under individual permits." *Id.*, ch. 2, § 4(a)(iii).

[¶ 13] The EPA approved the new Wyoming regulations, 56 Fed.Reg. 52030 (Oct. 17, 1991), and DEQ began the process of implementing a general permit system. The first general permits were written to apply to produced water discharges from coal bed methane operations. Because of the "density of the development" in the coal bed methane industry, DEQ foresaw that it could receive applications for up to "900 coal-bed methane [individual] permits." DEQ believed there were "efficiencies to be gained by putting together a general permitting program where a lot of the discharges are similar in nature, similar in quality, and if we break it down into a watershed extent, ... it's a good way to approach the permitting."

[¶ 14] DEQ issued the Pumpkin Creek and Willow Creek general permits following the procedures set forth in the new regulations governing general permits. These regulations are meant to allow interested parties and the public to participate in the development of such permits. They require public

notice of any proposed general permit, allow public comment on the draft permit, require DEQ to respond to such comments, allow any interested person to request a public meeting regarding the proposed permit, and provide that any interested person may request a hearing before the EQC to contest the issuance, denial, or modification of a general permit. Under these regulations, general permits are issued as licenses, and need not be promulgated under the rulemaking procedures set forth in the Wyoming Administrative Procedure Act.

[¶ 15] DEQ issued the Pumpkin Creek general permit after holding six public meetings, during which DEQ sought information from interested parties about existing water quality and soil characteristics, and about where landowners were irrigating in the drainage and what crops were being grown. DEQ published five different drafts of the permit, and solicited public comment on the drafts. As issued, the Pumpkin Creek general permit "covers all coal bed methane (CBM) operations within the Greater Pumpkin Creek watershed of the Powder River Basin in Northeastern Wyoming." The general permit sets forth in substantial detail the effluent limitations and water quality parameters such discharges must meet. These effluent limitations are more specific numerical statements of the previously-established narrative water quality standard, found in WWQR & R ch. 1, § 20, which reads as follows:

> All Wyoming surface waters which have the natural water quality potential for use as an agricultural water supply shall be maintained at a quality which allows continued use of such waters for agricultural purposes.
>
> Degradation of such waters shall not be of such an extent to cause a measurable decrease in crop or livestock production.

The general permit further provides that an operator must submit a "notice of intent" requesting authorization to discharge under this general permit, and must receive DEQ approval before beginning any discharges covered by the general permit. The Willow Creek general permit was issued following similar procedures, and contains similar requirements applicable to the Willow Creek watershed.

***First Issue: Must DEQ use statutory rulemaking procedures to issue general permits?***

[¶ 16] Wyo. Stat. Ann. § 16-3-103 sets forth the procedures required for the adoption, amendment, or repeal of administrative rules. Wyo. Stat. Ann. § 16-3-103(c) provides that "No rule is valid unless submitted, filed and adopted in substantial compliance with this section." A rule is defined as "each agency statement of general applicability that implements, interprets and prescribes law, policy or ordinances of cities and towns, or describes the organization, procedures, or practice requirements of any agency." Wyo. Stat. Ann. § 16-3-101(b)(ix). In contrast, a license is defined as "the whole or part of any agency permit, certificate, approval, registration, charter or similar form of permission required by law." Wyo. Stat. Ann. § 16-3-101(b)(iii). WOC contends that general permits are rules, and must therefore be promulgated pursuant to the rulemaking procedures specified by statute. DEQ, Yates, and Marathon assert that general permits are licenses, and are appropriately issued pursuant to the regulations establishing the general permit system.

[¶ 17] The district court, in its decision, provided this cogent summary of the parties' arguments on this issue:

> The heart of the WOC's argument is that adoption of the general permits constituted rulemaking because they are statements of general applicability. The [Wyoming Administrative Procedure Act] defines a rule to mean in part "each agency statement of general applicability that implements, interprets and prescribes law, policy or ordinances of cities and towns, or describes the organization, procedures, or practice requirements of any agency." Wyo. Stat. Ann. § 16-3-101(b)(ix) (LexisNexis 2005). The WOC points out that the general permits were not issued to an individual permittee, but rather to an entire class consisting of anybody who sought to discharge CBM [coal bed methane] water into the Pumpkin Creek or Willow Creek

drainages. Moreover, the permits did more than authorize CBM discharge. They set strict rules on any discharges including effluent limitations and the manner of storing the water. As a result, the WOC believes the permits are void for failure to follow the rulemaking procedures set forth in the [Wyoming Administrative Procedure Act] and the Wyoming Environmental Quality Act.

Yates, Marathon and the DEQ do not dispute that rulemaking procedures were not fully followed. Instead, they contend that the permits were not statements of general applicability, but rather are licenses granting permission to discharge CBM [water] to prospective permittees. A "license" under the [Wyoming Administrative Procedure Act] means "the whole or part of any agency permit, certificate, approval, registration, [charter] or similar form of permission required by law, but it does not include a license required solely for revenue purposes." Wyo. Stat. Ann. § 16–3–101(b)(iii) (LexisNexis 2005).... They point out that the criteria for issuing general permits has already been promulgated as a rule, and therefore believe there is no need for rulemaking every time the Department wishes to issue a general permit.

Whether the general permits are rules or licenses presents a threshold question in this appeal. All administrative rules must be adopted, amended, or repealed according to the procedure outlined in the [Wyoming Administrative Procedure Act], unless they are interpretive rules or statements of general policy. Wyo. Stat. Ann. § 16–3–103(a) (LexisNexis 2005). A rule that is promulgated without observance to proper procedure is void. Wyo. Stat. Ann. § 16–3–103(c) (LexisNexis 2005). As a result, a finding that the general permits are indeed rules will have the effect of invalidating the entire proceedings now before this Court for review.

■ [¶ 18] The district court noted that administrative law scholars generally divide administrative actions into adjudicative action and rulemaking. 32 Charles A. Wright & Charles H. Koch, *Federal Practice and Procedure: Judicial Review,* § 8122 (2006). Adjudicative action applies to "identifiable persons and specific situations," while legislative action "produces a general rule or policy." *Sheridan County Comm'n v. V.O. Gold Properties, LLC,* 2011 WY 16, ¶ 7, 247 P.3d 48, 50 (Wyo.2011). Wyoming has long distinguished between adjudicative actions and legislative actions in administrative law. *E.g., Tri–State Generation and Transmission Ass'n v. Wyoming Public Service Comm'n,* 735 P.2d 718, 721 (Wyo.1987). Licensing is generally accepted to be adjudicatory in nature, 2 Am.Jur.2d *Administrative Law* § 252 (2012), because it involves the application of previously established standards to individual facts. In contrast, the initial adoption of those standards is legislative in nature "since these standards are authoritative guides for future conduct." *Hornsby v. Allen,* 326 F.2d 605, 608 (5th Cir.1964).

[¶ 19] Still, as the district court recognized, it may be difficult to distinguish adjudicative actions from legislative actions in a particular situation. The district court noted that the issuance of general permits is similar to licensing in some ways, and similar to the initial adoption of standards in other ways. The district court found this situation "perplexing because the process at issue does not fit squarely within either category. Instead, it seems to be a hybrid of the two." However, the district court determined that the rule-making characteristics were dominant, largely because general permits seem to be statements of "general applicability." It therefore concluded that general permits must be promulgated as administrative rules.

■ [¶ 20] We agree with the district court that general permits seem to have some of the characteristics of rules, and some of the characteristics of licenses. We disagree, however, with the district court's ruling that general permits must be promulgated pursuant to the statutory procedures applicable to rulemaking. We instead conclude that DEQ followed appropriate procedures when it issued these two general permits.

[¶ 21] Wyo. Stat. Ann. § 35–11–302(a) provides for the establishment of "rules, regulations, standards and permit systems" to

promote water quality. Like the district court, we agree that the term "permit systems" encompasses general permits, providing DEQ with the statutory authority to issue general permits. When DEQ issued the two general permits in question, however, the Wyoming Environmental Quality Act provided no guidance as to what procedures were to be used. The Wyoming Administrative Procedure Act also contains no explicit answer to the question of whether general permits could be issued as licenses, or must be promulgated as rules.

[¶ 22] Because of this lack of guidance, the statutes must be considered "vague or uncertain and subject to varying interpretations," and therefore ambiguous. *See State ex rel. Wyo. Dept. of Revenue v. UPRC,* 2003 WY 54, ¶ 12, 67 P.3d 1176, 1182 (Wyo.2003). DEQ resolved the ambiguity by promulgating regulations providing that general permits could be issued as licenses. "We generally defer to the construction placed on a statute by the agency that is charged with its execution, provided, however, that the agency's construction does not conflict with the legislature's intent." *Qwest Corp. v. State ex rel. Wyo. Dept. of Revenue,* 2006 WY 35, ¶ 8, 130 P.3d 507, 511 (Wyo.2006); quoting *Petroleum Inc. v. State Bd. of Equalization,* 983 P.2d 1237, 1240 (Wyo.1999). *See also Exxon Mobil Corp. v. Dep't of Revenue,* 2009 WY 139, ¶ 38, 219 P.3d 128, 140 (Wyo.2009). Given the "hybrid" nature of general permits and the lack of statutory guidance as to the proper procedure for issuing general permits, we cannot say that DEQ's statutory interpretation conflicts with the legislature's intent.

[¶ 23] We also employ a tool of statutory interpretation that was not available to the district court. In 2012, after the district court ruled that general permits needed to be promulgated as rules, the Wyoming legislature amended the Wyoming Administrative Procedure Act, Wyo. Stat. Ann. § 16-3-101. It added the text emphasized below:

> (b) As used in this act:
>
> (ix) "Rule" means each agency statement of general applicability that implements, interprets and prescribes law, policy or ordinances of cities and towns, or describes the organization, procedures, or practice requirements of any agency. The term ... does not include: ...
>
> ***(H) A general permit.***
>
> ***(xi) "General permit" means a permit issued by the department of environmental quality which authorizes a category or categories of discharges or emissions.***

2012 Wyo. Sess. Laws ch. 109, § 1 (underlining omitted; emphasis added). The legislature also added a new provision to the Wyoming Environmental Quality Act, Wyo. Stat. Ann. § 35-11-801:

> (d) General permits shall be issued solely in accordance with procedures set forth by regulation adopted by the council. Procedures for the issuances of general permits shall include public notice and an opportunity for comment. All department authorizations to use general permits under this section shall be available for public comment for thirty (30) days. Any aggrieved party may appeal the authorization as provided in this act.

2012 Wyo. Sess. Laws ch. 109, § 1 (underlining omitted).

[¶ 24] The legislature could hardly have provided a more explicit expression of its intent that general permits do not need to be promulgated as rules.

> We have repeatedly held that "subsequent legislative corrective action" is a valuable tool of statutory construction. *Department of Revenue and Taxation v. Irvine,* Wyo., 589 P.2d 1295, 1300 (1979), and cases cited therein. "That is particularly so and entitled to great weight when it follows immediately after controversies that have arisen as to true construction." *Id.* at 1300.

*Caton v. State,* 709 P.2d 1260, 1269 (Wyo. 1985). *See also Moncrief v. Wyoming State Bd. of Equalization,* 856 P.2d 440, 444-45 (Wyo.1993); *Romero v. Hoppal,* 855 P.2d 366, 369 (Wyo.1993); *State Bd. of Equalization v. Stanolind Oil & Gas Co.,* 54 Wyo. 521, 540, 94 P.2d 147, 153 (1939).

[¶ 25] Considering the legislature's "subsequent corrective action" in this case, we conclude that the legislature never intended that general permits had to be promulgated

as administrative rules. The legislative amendments explicitly allow DEQ to issue general permits "in accordance with procedures set forth by regulation adopted by the council." DEQ followed those procedures when it issued the Pumpkin Creek and Willow Creek general permits. We therefore reverse the district court's ruling on this issue.

***Second Issue: Was WOC entitled to administrative review before the EQC?***

[¶ 26] The position advocated by Yates and Marathon begins with the proposition that the "[a]ctions of an administrative agent are not reviewable unless made so by statute." *Holding's Little America v. Board of County Comm'rs of Laramie County,* 670 P.2d 699, 702 (Wyo.1983). Yates and Marathon assert that there is no provision in the Wyoming Environmental Quality Act that expressly gives interested third parties like WOC the right to EQC review of DEQ's water quality decisions. They also point to Wyo. Stat. Ann. § 35-11-802, which provides that, "If the director refuses to grant any permit under this act, ***the applicant*** may petition for a hearing before the council to contest the decision." (Emphasis added.) This statute, Yates and Marathon maintain, gives the right to administrative review only to the permit applicant, thereby implying that interested third parties do not have the right to seek administrative review. Yates and Marathon also point to Wyo. Stat. Ann. § 35-11-1001(a), which provides that, "Any aggrieved party under this act, any person who filed a complaint on which a hearing was denied, and any person who has been denied a variance or permit under this act, may obtain judicial review." Based on these statutory provisions, Yates and Marathon contend that WOC was not entitled to EQC review of DEQ's decision to issue the general permits, but was limited to seeking judicial review.

█ [¶ 27] Yates and Marathon have accurately quoted from our decision in *Holding's Little America,* but it is important to read the quotation in context:

> The right of judicial review of an administrative decision is statutory. Actions of an administrative agent are not reviewable unless made so by statute. Legislative intent to restrict judicial review of an administrative action must be clear and persuasive[;] reason must exist to believe that restriction was the legislative purpose. *United States Steel Corp. v. Wyoming Environmental Quality Council,* Wyo., 575 P.2d 749 (1978). *See also, Walker v. Board of Cty. Comm'rs, Albany Cty.,* Wyo., 644 P.2d 772 (1982). We stated in *Keslar v. Police Civil Service Comm'n, City of Rock Springs,* Wyo., 665 P.2d 937 (1983) that:
>
> > "So far as policy considerations are concerned, it is our view that the interests of the State of Wyoming are best served by a policy which leads to reviewability in most instances. * * *" *Id.* at 942.
>
> And, to preclude judicial review, the statute, if not specific in withholding that review, must give clear and convincing evidence of an intent to restrict. The mere failure to provide specially by statute for judicial review is certainly no evidence of intent to withhold.

*Holding's Little America,* 670 P.2d at 702–03. As applied to our current case, the significant point of our decision in *Holding's Little America* is that the right to review is presumed, and review is precluded only if the legislature provides "clear and convincing evidence of an intent to restrict." Although *Holding's Little America* dealt with judicial review of agency action, this point also applies to administrative review of agency action.

█ [¶ 28] Yates and Marathon are correct that there is no statute expressly granting WOC the right to administrative review. However, there is also no statute that clearly and convincingly precludes such review and, in the absence of any such restriction, the right to review is presumed. In addition, we note another statutory provision that strongly indicates the legislature's intent to allow EQC review of "all cases or issues" arising under the Wyoming Environmental Quality Act:

> (a) The council shall act as the hearing examiner for the department and shall hear and determine all cases or issues

arising under the laws, rules, regulations, standards or orders issued or administered by the department or its air quality, land quality, solid and hazardous waste management or water quality divisions.... The council shall: ...

(iv) Conduct hearings in any case contesting the grant, denial, suspension, revocation or renewal of any permit, license, certification or variance authorized or required by this act.

Wyo. Stat. Ann. § 35-11-112.

[¶ 29] DEQ regulations also provide that any "interested person" may request a hearing before the EQC concerning "a decision to issue, modify, or terminate a permit." WWQR & R, ch. 2, § 17. *See also* General Rules of Practice and Procedure of the Department of Environmental Quality, ch. 1, §§ 2-3. These regulations plainly express the agency's interpretation that the Wyoming Environmental Quality Act allows WOC to seek EQC review of DEQ's decision to issue the two general permits. As noted earlier, we generally defer to an agency's interpretation of the statutes it is charged with executing. *Qwest,* ¶ 8, 130 P.3d at 511. Moreover, this Court has heard a number of cases over the years in which interested third parties received hearings before the EQC, and later sought judicial review of the EQC's decisions. *See, e.g., Sierra Club v. Wyoming Dep't of Envtl. Quality,* 2011 WY 42, 251 P.3d 310 (Wyo.2011); *Powder River Basin Res. Council v. Wyoming Envtl. Quality Council,* 2010 WY 25, 226 P.3d 809 (Wyo. 2010); *Powder River Basin Res. Council v. Wyoming Dep't of Envtl. Quality,* 869 P.2d 435 (Wyo.1994).

[¶ 30] The Wyoming Environmental Quality Act may be silent about the right of an interested third party to seek EQC review of DEQ decisions, but that silence should not be read to preclude EQC review. To the contrary, the opinion in *Holding's Little America* indicates that statutory silence raises a presumption that EQC review is not precluded. DEQ's regulations are consistent with this interpretation of the statute, and we will defer to that interpretation. We affirm the district court's decision on this issue.

## *CONCLUSION*

[¶ 31] We reverse the district court ruling that the DEQ is required to promulgate general permits as administrative rules, because we agree with the EQC's decision that the two general permits in question were issued following appropriate procedures. We affirm the district court's ruling that WOC was entitled to EQC review of the DEQ's decision to issue these general permits.