# IN THE SUPREME COURT, STATE OF WYOMING

## 2019 WY 92

**APRIL TERM, A.D. 2019**

**September 9, 2019**

IN THE MATTER OF THE WORKER'S
COMPENSATION CLAIM OF:

MARGARITO CAMACHO,

Appellant
(Petitioner),

v.                                                                      S-18-0287

STATE OF WYOMING, ex rel.
DEPARTMENT OF WORKFORCE
SERVICES, WORKERS'
COMPENSATION DIVISION,

Appellee
(Respondent).

*Appeal from the District Court of Laramie County*
*The Honorable Steven K. Sharpe, Judge*

*Representing Appellant:*

   *Bernard Q. Phelan, Phelan Law Offices, Cheyenne, Wyoming.*

*Representing Appellee:*

   *Bridget L. Hill, Attorney General; Michael J. McGrady, Deputy Attorney General; James C. Demers, Senior Assistant Attorney General; Kelly D. Mullen, Assistant Attorney General.*

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]   Margarito Camacho reported that he injured his back while working in October 2011.   The Department of Workforce Services, Workers' Compensation Division (Division) awarded him temporary benefits.   After several years of medical treatment without relief from his pain, Mr. Camacho applied to the Division for permanent partial disability benefits.   The Division denied the application, the Office of Administrative Hearings (OAH) upheld the denial, and the district court affirmed the OAH's decision. We also affirm.

### ISSUES

[¶2]   We address two issues:

1. Did the OAH correctly calculate the limitations period under Wyo. Stat. Ann. § 27-14-405(h)(ii)?

2. Does substantial evidence support the OAH's conclusion that Mr. Camacho failed to prove his 2011 injury was the cause of his inability to return to work?

### FACTS

[¶3]   On October 14, 2011, Mr. Camacho reported that he injured his lower back when he attempted to lift a heavy item while working at Lowe's in Cheyenne, Wyoming.   The Division reviewed the report, deemed his injury compensable, and opened a case.   Over the next few years, Mr. Camacho visited various doctors for physical and psychological evaluations, pain management treatments, and physical therapy.

Medical History

[¶4]   Dr. Eric Siiteri conducted several "pain psychological consultations" with Mr. Camacho in December 2011 and January 2012.   He noted that Mr. Camacho had "undergone neurosurgical evaluation with [another doctor] who documented bulging in lumbar discs [that] did not warrant surgical intervention" and that he had "undergone additional diagnostic studies [that] ruled out significant neurological injury."   At a later pain management psychotherapy session, Dr. Siiteri "had a long conversation with Mr. Camacho about the role that emotional factors including symptoms of depression and anxiety, psychosocial stress and expectations have on the pain experience."   Dr. Siiteri stated that Mr. Camacho "understood my, and others, observations of his expression of pain and related behaviors in the absence of significant . . . medical findings."

1

[¶5]    In October 2012, Dr. Bruce Belleville evaluated Mr. Camacho to determine his impairment rating.  Dr. Belleville found that Mr. Camacho was not a good candidate for surgery, had a history of low-back pain dating back to 2006, and that he had "twenty-six documented emergency room visits that predated the injury of October 14, 2011," including an "emergency room visit about low back pain . . . that preceded the injury of record by less than two months." (Emphasis omitted.)  He also diagnosed Mr. Camacho with a "profound anxiety disorder."  Concluding that he could not "assign an impairment rating for a pain condition that appears to have been pre-existent," Dr. Belleville assigned him a 0% whole person impairment rating.

[¶6]    In February 2013, Dr. Ricardo Nieves conducted a second evaluation.  Dr. Nieves rated him at 6% whole person impairment and recommended various "light duty" work restrictions.  He noted that Mr. Camacho had a "history of pre-existing lower back pain in 2006," and "preexisting chronic depression."  His diagnosis was "[c]hronic lower back pain with L5-S1 disc protrusion and discogenic pain with non-verifiable radicular complaints."

[¶7]    In April 2013, Dr. Christopher Brigham reviewed Dr. Belleville's and Dr. Nieves' impairment evaluations at the request of the Division.  He noted that Mr. Camacho's "[m]edical records document extensive emergency room visits [] for a variety of problems, including low back pain" and that "he was seen for low back pain on August 28, 2011; e.g. approximately six weeks prior to his more recent 'injury.'"  According to Dr. Brigham, imaging studies had been "unremarkable."  He stated that Mr. Camacho's chronic low-back pain was "unsupported by objective findings" and that his complaints of low-back pain dated "back to at least 2006."  He believed "[t]he significance of the October 14, 2011 'injury' [was] very questionable."  He noted that Mr. Camacho's imaging studies showed "findings that are commonly seen [in] asymptomatic individuals" and that it was "inappropriate to label him [as] having degenerative [disc] 'disease' or to identify this as the cause of his pain."  Therefore, Dr. Brigham concluded that there was "no ratable impairment associated with [Mr. Camacho's] October 14, 2011 injury."

[¶8]    Dr. Michael Janssen performed a review of Mr. Camacho's medical records in August 2013.  He found that the "overall pattern of [Mr. Camacho's] underlying symptoms, utilization of resources and emergency facilities have been chronic in nature for many years, as clearly indicated in all the extensive medical records."  He had "a high suspicion that the subjective symptoms [] far exceed the underlying objective inconsistent pathology."  In Dr. Janssen's opinion, surgery was "not reasonable or necessary and [had] a very low yield of improving [Mr. Camacho's] underlying condition."

[¶9]    Dr. Brian Wieder also reviewed Mr. Camacho's medical records in August 2013.  He concluded that it was unlikely that the October 14, 2011 incident was the cause of Mr. Camacho's symptoms.  He noted that Mr. Camacho's symptoms and pathology

2

predated the October 14, 2011 incident and had not changed after the incident.  He also observed that Mr. Camacho "appear[ed] fragile psychologically" and "had more visits to the E.R. than any patient [he had] ever seen."  Thus, he believed Mr. Camacho would likely be experiencing similar symptoms absent the injury in October 2011.  He recommended against surgery.

[¶10]  Nevertheless, Mr. Camacho underwent spinal fusion surgery in October 2014.  The surgery did not alleviate his pain, and he continued to seek evaluations and pain management treatment.  Eventually, the Division referred Mr. Camacho to Dr. Greg Reichhardt for an Independent Medical Evaluation.  Dr. Reichhardt noted that Mr. Camacho's reported symptoms were "out of proportion to objective findings" and were "difficult to explain on a medical basis."  He concluded that Mr. Camacho had reached ascertainable loss on October 2, 2015, and assigned him a 6% whole person impairment rating.

Course of Proceedings

[¶11]  Based on Dr. Reichhardt's evaluation, the Division awarded Mr. Camacho a final payment of $436.82 on November 10, 2015.  Mr. Camacho timely requested a second opinion.  Dr. Belleville performed another evaluation in January 2016, agreeing with Dr. Reichhardt's 6% impairment rating.  Thus, the Division determined that Mr. Camacho was not entitled to any additional payment.  Mr. Camacho timely responded to this determination, disagreeing with the 6% impairment rating, and the case was referred to the Medical Commission Hearing Panel.  However, Mr. Camacho voluntarily withdrew his objection in January 2017, and the Medical Commission dismissed the case.

[¶12]  Mr. Camacho applied to the Division for permanent partial disability (PPD) benefits on February 23, 2017.  The Division denied his application because it did not "contain a minimum of five (5) contacts per week over the course of [a] six (6) week period," as required.[1]  Mr. Camacho objected to the denial of PPD benefits, and the case was referred to the OAH.

[¶13]  At the hearing, Mr. Camacho's fiancée, Erin Maestas, testified that she lived with Mr. Camacho before his 2011 injury and that he "was normal" before the incident and

---

[1] The final determination denying Mr. Camacho's permanent partial disability application cited Wyo. Stat. Ann. § 27-14-405(h)(iii) for the requirement that the work search consist of a minimum of five contacts per week over a six-week period.  The statute contains no such requirement.  Wyo. Stat. Ann. § 27-14-405(h)(iii).  It requires only that "[t]he employee has actively sought suitable work, considering the employee's health, education, training and experience."  *Id.*  The requirement that the employee contact five employers per week over a six-week period arises from a Division rule.  *Rules Wyo. Dep't of Workforce Servs., Workers' Comp. Div.* ch. 1, § 3(c).

3

she "never [] even knew that he had a previous injury." She testified that after the 2011 Lowe's injury, she "could tell he was in pain" and that his condition never improved even though he followed doctors' instructions "To the T." Mr. Camacho testified that he had a previous back injury "similar to what [he] had gotten from the [Lowe's] injury" but that he "was doing good until [he] had gotten hurt again." He testified that he did not remember going to the emergency room for back pain two months before the Lowe's injury. He also testified that he did not remember filing an injury report in 2009 stating that he injured his lower back while working at McDonald's. Finally, Division claims analyst Kaitlin Hermes testified about the workers' compensation claims process in general and about various claims made in Mr. Camacho's case. Neither Mr. Camacho nor the Division called any additional witnesses.

[¶14] The OAH upheld the Division's denial of PPD benefits, concluding that Mr. Camacho "failed to prove his work injury [was] the cause of his inability to return to employment and failed to prove he timely filed his PPD application."[2] Concerning whether Mr. Camacho's inability to work was caused by his 2011 injury, the hearing examiner found:

> While PPD benefits are intended to compensate for disability, that disability must be work related. It is not reasonably disputed that Camacho cannot currently work. First, he has not worked and he has not made any serious effort to return to work. There remain work restrictions in place. More generally, Camacho's reports of pain (whether credible or not) would certainly cripple anybody's attempts to work. The question is whether Camacho's inability to work is caused by his 2011 work injury. Unfortunately for Camacho, this Hearing Examiner answers that question in the negative—Camacho has not proven he is unable to work as a result of his 2011 work injury.

> Camacho's medical history, before and after the 2011 work injury, is well documented. For this Hearing Examiner, the theme that emerges from reviewing various evaluations outlined above is that Camacho presents with a complicated array of symptoms that are not easily explained. Part of the difficulty in explaining those symptoms comes from what was pointed out by a number of the evaluators, that

---

[2] The hearing examiner also noted that there was "no doubt Camacho's work search [did] not meet the letter of the rule that requires five contacts per week for a six-week period" although he suspected that a reviewing court would excuse this "technical failure." Because we affirm on other grounds, we do not address the OAH's conclusion on the work-search requirement.

4

Camacho's subjective complaints are out of proportion to the objective findings. The objective findings fail to account for the severity of Camacho's subjective complaints. Moreover, several of the evaluators voiced concern to the psychological component to Camacho's subjective complaints.

The theme is not that Camacho's work injury is not the cause of his current inability to return to employment; rather, the theme is that there are unexplained factors other than the work injury that are preventing Camacho from returning to employment.

Given Camacho's previous history of low back problems, the additional complication of his psychological condition as described in the evaluations, and the overall complexity of his case, it was incumbent upon Camacho to come forward with evidence that his injury was the cause of his disability. Certainly he and his fiancée attribute his disability to his work injury; according to them, Camacho changed significantly following the injury. Unfortunately, for this Hearing Examiner there is not a credible medical opinion that Camacho's 2011 work injury is the reason he is not able to work today.

This Hearing Examiner finds and concludes Camacho has not proven his 2011 work injury is the reason he is not able to return to employment.

[¶15] On petition for judicial review, the district court affirmed the OAH order, finding that Mr. Camacho's "PPD application was untimely under Wyo. Stat. Ann. § 27-14-405(h)(ii)" and that "substantial evidence support[ed] the hearing examiner's decision to deny [] PPD benefits under Wyo. Stat. Ann. § 27-14-405[(h)](i) and Wyo. Stat. Ann. § 27-14-405(h)(iii)." Mr. Camacho timely appealed to this Court.

### DISCUSSION

## I.   The OAH correctly calculated the limitations period under Wyo. Stat. Ann. § 27-14-405(h)(ii)

[¶16] Mr. Camacho argues he timely applied to the Division for PPD benefits because there was no final determination of his physical impairment rating until the Medical Commission dismissed his case in January 2017. He reasons that the last scheduled impairment payment could not have occurred in November 2015 because it was possible

5

that the Medical Commission would arrive at a different impairment rating and that he would receive an additional payment as a result. Therefore, he asserts that the limitations period in section 27-14-405(h)(ii) was equitably tolled while his objection was pending before the Medical Commission. The Division counters that section 27-14-405(h)(ii) is unambiguous and establishes that Mr. Camacho had until January 2, 2017, to apply for PPD benefits. It argues that the limitations period was not tolled because the pendency of the Medical Commission hearing did not prevent him from applying for PPD benefits.

[¶17] We address the timeliness of Mr. Camacho's PPD application so far as necessary to resolve a conflict between our precedent and the OAH's interpretation of Wyo. Stat. Ann. § 27-14-405(h)(ii). We give no deference to a district court's decision reviewing an administrative agency action and "review the case as if it had come directly to us from the administrative agency." *Hampton v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2013 WY 17, ¶ 6, 296 P.3d 934, 936 (Wyo. 2013) (quoting *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 8, 188 P.3d 554, 557 (Wyo. 2008)). Further,

> interpretation and correct application of the provisions of the Wyoming Workers' Compensation Act is a question of law over which our review authority is plenary. Conclusions of law made by an administrative agency are affirmed only if they are in accord with the law. We do not afford any deference to the agency's determination, and we will correct any error made by the agency in either interpreting or applying the law.

*Bailey v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2010 WY 152, ¶ 9, 243 P.3d 953, 956 (Wyo. 2010) (quoting *Osenbaugh v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 10 P.3d 544, 547-48 (Wyo. 2000)). The issue of whether Mr. Camacho timely applied for PPD benefits requires us to interpret section 27-14-405(h)(ii) of the Wyoming Worker's Compensation Act. "Statutory interpretation raises questions of law, which we review *de novo*." *State ex rel. Wyo. Workers' Safety & Comp. Div. v. Smith*, 2013 WY 26, ¶ 9, 296 P.3d 939, 941-42 (Wyo. 2013) (citing *Wyo. Dep't of Envtl. Quality v. Wyo. Outdoor Council*, 2012 WY 135, ¶ 8, 286 P.3d 1045, 1048 (Wyo. 2012)). Our goal is to ascertain the legislature's intent as reflected in the plain language of the statute. *Kebschull v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2017 WY 94, ¶ 38, 399 P.3d 1249, 1258 (Wyo. 2017). We "construe each statutory provision *in pari materia*, giving effect to every word, clause, and sentence according to their arrangement and connection." *Wyo. Jet Ctr., LLC v. Jackson Hole Airport Bd.*, 2019 WY 6, ¶ 12, 432 P.3d 910, 915 (Wyo. 2019) (quoting *PacifiCorp, Inc. v. Wyo. Dep't of Rev.*, 2017 WY 106, ¶ 10, 401 P.3d 905, 908 (Wyo. 2017)).

[¶18] Wyo. Stat. Ann. § 27-14-405(h) (LexisNexis 2019) sets forth three "terms and conditions" an injured employee must satisfy when applying for PPD benefits. Section

27-14-405(h)(ii) requires the employee to file an application with the Division "not before three (3) months after the date of ascertainable loss or three (3) months before the last scheduled impairment payment, whichever occurs later, but in no event later than one (1) year following the later date." This language establishes a window in which an injured employee must apply for PPD benefits. An injured employee may first apply for PPD benefits the later of three months after the date of ascertainable loss or three months before the date of the last scheduled impairment payment. He is barred from applying for PPD benefits one year after the later of those two dates.

[¶19] Mr. Camacho concedes that section 27-14-405(h)(ii) contains "no statutory language tolling the 'not before' and 'not after' language of the time limitation." "We will not add that language in the guise of statutory interpretation. 'This Court is not at liberty to add words to a statute that the legislature chose to omit.'" *Int'l Ass'n of Fire Fighters Local Union No. 5058 v. Gillette/Wright/Campbell Cty. Fire Protection Joint Powers Bd.*, 2018 WY 75, ¶ 33, 421 P.3d 1059, 1067 (Wyo. 2018) (quoting *Wyodak Res. Dev. Corp. v. Wyo. Dep't of Rev.*, 2017 WY 6, ¶ 31, 387 P.3d 725, 733 (Wyo. 2017)). We also decline to equitably toll the statutory deadline in these circumstances. Equitable tolling "extends statutory deadlines in extraordinary circumstances for parties who have been prevented from complying with them through no fault or lack of diligence of their own." 51 Am. Jur. 2d *Limitation of Actions* § 153 (Aug. 2019 Update). Any equitable circumstances preventing a party from complying with statutory deadlines "must be truly beyond the control of the plaintiff." *Id.* Such extraordinary circumstances do not exist here. The plain language of Wyo. Stat. Ann. § 27-14-405(h)(ii) does not require a decision from the Medical Commission to establish the date of the "last scheduled impairment payment." Mr. Camacho knew that he received his last scheduled impairment payment in November 2015. Speculation that a Medical Commission decision might result in an additional payment at some later date is not a sufficient basis to apply equitable tolling.

[¶20] To determine the window in which an injured employee may apply for PPD benefits, a claimant must: 1) add three months to the date of ascertainable loss; 2) subtract three months from the date of the last scheduled impairment payment; 3) choose the later of the two dates after doing those calculations; and 4) add one year to that later date. Wyo. Stat. Ann. § 27-14-405(h)(ii). That is precisely what the OAH did in this case:

> Camacho could [] file his PPD application: (1) not before three months after October 2, 2015 (the latest MMI date, established by Dr. Reichhardt)—January 2, 2016; or (2) three months before November 2015 (the last PPI payment)—August 2015. Camacho had to file his PPD application one year following January 2, 2016, by January 2, 2017.

Therefore, Camacho's PPD Application, filed in February 2017, was not timely filed.

The OAH added three months to Mr. Camacho's date of ascertainable loss, October 2, 2015,[3] to arrive at the January 2, 2016 date. It subtracted three months from the date of his last impairment payment, November 2015, to arrive at the August 2015 date. It then added one year to the later of those two dates to arrive at Mr. Camacho's January 2, 2017 deadline. This is a correct application of Wyo. Stat. Ann. § 27-14-405(h)(ii).

[¶21] This Court considered section 27-14-405(h)(ii) in *Worker's Comp. Claim of Stallman v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2012 WY 147, ¶¶ 15, 18, 288 P.3d 707, 713-14 (Wyo. 2012). In *Stallman*, we indicated that a claimant must select the later of the date of ascertainable loss or "the date [the claimant] received her last permanent partial impairment payment," then subtract three months from that later date to determine when the one-year limitations period began to run. *Id.* at ¶ 15, 288 P.3d at 713. The plain language of section 27-14-405(h)(ii) contradicts *Stallman's* interpretation. Section 27-14-405(h)(ii) does not allow a claimant to file a PPD application three months *before* the date of ascertainable loss; it requires a claimant to wait three months *after* the date of ascertainable loss before applying for PPD benefits. Adding three months to the date of ascertainable loss and subtracting three months from the date of last payment will alter the original order of those dates in some situations, as it did here. To the extent *Stallman* suggests section 27-14-405(h)(ii) applies otherwise, it is overruled.[4]

## II.     There is substantial evidence in the record to support the OAH's conclusion that Mr. Camacho failed to prove his 2011 injury was the cause of his inability to return to work

[¶22] Mr. Camacho argues the OAH's conclusion that he failed to prove the 2011 injury was the cause of his inability to return to work was not supported by substantial evidence because he "testified extensively about his lifting restrictions and the pain that he experienced" and because his fiancée "testified that before his October 2011 injury, [he] was 'normal' with no significant pain or disability, but after his Lowe's injury he was different." He argues evidence the OAH relied on to reach its conclusion "is insufficient

---

[3] The date of ascertainable loss is the "point in time in which it is apparent that permanent physical impairment has resulted from a compensable injury, the extent of the physical impairment due to the injury can be determined and the physical impairment will not substantially improve or deteriorate because of the injury." Wyo. Stat. Ann. § 27-14-102(a)(ii). "Ascertainable loss is commonly measured at the point of maximum medical improvement. The point of ascertainable loss is also the point at which temporary total disability payments end and an employee may apply for a permanent partial impairment award." *Worker's Comp. Claim of Stallman*, 2012 WY 147, ¶ 15 n.2, 288 P.3d at 713 n.2 (citations omitted).

[4] Mr. Camacho argues that Wyo. Stat. Ann. § 27-14-405(h)(ii) is confusing, and we agree. However, under any approach, his application was too late.

to outweigh the live testimony of the claimant . . . and that of Erin Maestas." The Division counters that Mr. Camacho did not meet his burden of proof and that the OAH's conclusion "is not contrary to the overwhelming weight of the evidence."

[¶23] Judicial review of an administrative agency's decision is governed by Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2019):

> (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
>
> . . .
>
> (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
>
> > (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
> >
> > (B) Contrary to constitutional right, power, privilege or immunity;
> >
> > (C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;
> >
> > (D) Without observance of procedure required by law; or
> >
> > (E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

"[T]he substantial evidence test is the appropriate standard of review in appeals from WAPA contested case proceedings when factual findings are involved and both parties submit evidence." *Dale*, 2008 WY 84, ¶ 10, 188 P.3d at 558. We apply the substantial evidence test as follows:

9

In reviewing findings of fact, we examine the entire record to determine whether there is substantial evidence to support an agency's findings. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. It is more than a scintilla of evidence.

*Id.* at ¶ 11, 188 P.3d at 558 (citations omitted). Further,

If the hearing examiner determines that the burdened party failed to meet his burden of proof, we will decide whether there is substantial evidence to support the agency's decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole.

*Id.* at ¶ 22, 188 P.3d at 561 (citations omitted); *Watkins v. State ex rel. Wyo. Med. Comm'n*, 2011 WY 49, ¶ 16, 250 P.3d 1082, 1086 (Wyo. 2011). The administrative agency "is the trier of fact and has the duty to weigh the evidence and determine the credibility of witnesses"; thus, we defer to the OAH's findings of fact unless clearly contrary to the overwhelming weight of the evidence. *Dale*, 2008 WY 84, ¶ 11, 188 P.3d at 558-59 (citations omitted). Our review turns on "whether the agency could reasonably conclude as it did, based on all the evidence before it." *Id.* at ¶ 22, 188 P.3d at 561; *Kebschull*, 2017 WY 94, ¶ 28, 399 P.3d at 1256.

[¶24] The Wyoming Worker's Compensation Act defines "[p]ermanent partial disability" as "economic loss to an injured employee . . . resulting from a permanent physical impairment." Wyo. Stat. Ann. § 27-14-102(a)(xv) (LexisNexis 2019). Wyo. Stat. Ann. § 27-14-405(h)(i) requires a claimant to show that "because of the injury, [he is] unable to return to employment at a wage that is at least ninety-five percent (95%) of the monthly gross earnings [he] was earning at the time of injury." We have emphasized that "the employee's inability to return to employment . . . must be 'because of the injury' in order to justify a PPD award." *Bonsell v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2006 WY 114, ¶ 15, 142 P.3d 686, 690 (Wyo. 2006). The claimant has the burden of proving that the injury is the cause of his inability to return to work by a preponderance of the evidence at the contested case hearing. *Id.* at ¶ 10, 142 P.3d at 689 (citing *Abeyta v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2004 WY 50, ¶ 5, 88 P.3d 1072, 1075 (Wyo. 2004)). On appeal, it is the employee's "burden [] to demonstrate the [agency's] findings of fact were not supported by substantial evidence." *Hart v. State*

*ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2018 WY 105, ¶ 19, 442 P.3d 653, 659 (Wyo. 2018) (citing *Watkins*, 2011 WY 49, ¶ 16, 250 P.3d at 1086).

[¶25]  Mr. Camacho does not meet that burden.  The record contains substantial evidence to support the OAH's conclusion.  Mr. Camacho's medical history shows that he had suffered from low-back pain since 2006.  Several doctors opined that Mr. Camacho's complaints did not align with objective medical findings.  Further, several of them attributed the inconsistency between Mr. Camacho's subjective complaints and objective medical findings to psychological factors, such as depression and anxiety.  Various doctors expressed skepticism that the 2011 injury was the cause of Mr. Camacho's pain and believed that he would have been experiencing the same symptoms absent that incident.  Given that, it was incumbent on Mr. Camacho to come forward with medical evidence supporting his claim that the 2011 injury was the cause of his inability to work:

> [E]ven when a single incident is alleged to have caused the injury, medical testimony can be essential to establish a causal connection if the medical condition is not immediately and directly or naturally and probably the result of the workplace incident. . . . We have required medical evidence to establish causation . . . when there is a preexisting condition, or when the claimant's symptoms and medical history are complex.

*In re Lysne*, 2018 WY 107, ¶¶ 17-18, 426 P.3d 290, 296 (Wyo. 2018) (quotation marks omitted) (considering whether there was substantial evidence to conclude the claimant's work injury caused his need for knee replacement surgery) (citing *In re Thornberg*, 913 P.2d 863, 867 (Wyo. 1996); *Landwehr v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2014 WY 25, ¶ 18, 318 P.3d 813, 820-21 (Wyo. 2014) (considering whether there was substantial evidence to conclude there was no causal connection between a claimant's 1999 workplace injury and her 2010 symptoms); *Hayes v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2013 WY 96, ¶ 22, 307 P.3d 843, 850 (Wyo. 2013); *Boyce v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2005 WY 9, ¶ 16, 105 P.3d 451, 456 (Wyo. 2005)).  We hold the OAH could reasonably conclude as it did and its decision was not contrary to the overwhelming weight of the evidence as a whole.

[¶26]  Affirmed.